UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD KOONS, *et al.*, | : |
|     Plaintiffs, | : No. 1:22-cv-07464 |
| v. | : **DECLARATION OF** |
| | : **JEFFREY M. MULLER** |
| WILLIAM REYNOLDS, *et al.*, | : |
|     Defendants. | : |

I, Jeffrey M. Muller, declare as follows:

1. I am 72 years old and married. I live in the Township of Frankford in Sussex County, New Jersey.

2. I am a member of the four organizations that are plaintiffs in this case: Second Amendment Foundation; Firearms Policy Coalition, Inc.; Coalition of New Jersey Firearm Owners; and New Jersey Second Amendment Society.

3. Previously, I owned and operated J&G Pet Food and Supply in Newton, New Jersey. One morning in January 2010, three men attacked me when I arrived at the store. They beat me, stunned me several times with a stun gun and forced me into their car. They then drove me for many hours, to Missouri, where the car broke down. The car was towed to a convenience store and while there, I was able to slip out of zip ties and escape the vehicle and obtain help. I do not know what would have happened if I had not been able to escape. It is my understanding that the men mistook me for a different "Jeff Muller," who a fourth individual thought had wronged him.

4. After escaping, I returned to New Jersey. At that point, I was the principle witness in the pending criminal cases against my kidnappers, and I was very concerned for my safety,

and I decided to obtain a permit to carry pursuant to N.J.S.A. § 2C:58-4. I completed an application in late January and early February of 2020 and submitted it to the New Jersey State Police. I submitted the final documentation needed for the permit (proof that I had passed the required qualification test) in March, and I understand that the New Jersey State Police approved my application the following month, in April 2010.

5. After this, I did not hear anything about my application for many months. Around October 2010, someone at the State Police told me that a judge had denied my application. I later learned that the judge had denied my application on August 31, 2010. I was never given an opportunity for a hearing.

6. After learning of the denial of my permit, I submitted a motion for reconsideration. Several weeks later I had not heard anything from the court, and I joined an in this court, which challenged the constitutionality of the previous "justifiable need" standard. *See Muller v. Maenza*, no. 2:10-cv-06110-WHW (D.N.J. filed Nov. 22, 2010). Later, the court transferred my reconsideration motion to a new judge, and the new judge ultimately granted my motion and ordered the issuance of my permit. I actually obtained the permit in June 2011.

7. Ever since then, I have renewed my permit to carry every two years without significant incident. About four years ago, after I took a job driving a school bus, Judge Conforti placed a restriction on my permit against carrying on a school bus. I had never carried a gun while in a school bus because the company's policy prohibits it, and I did not object to the restriction. A current copy of my permit to carry is attached as Exhibit 1.

8. When I obtained my permit to carry in June 2011, I remained very concerned about my personal safety, and I began to carry my handgun on a nearly constant basis. (This was before I worked driving school buses.) For the next several years, I carried a handgun with me

nearly every place I went, unless it was a place where it was illegal to have a gun. At the present time (just prior to enactment of the "sensitive places" law), I still carry a handgun on a regular basis, but not as frequently as I did in the first years after I obtained my permit.

9. Throughout this period, I have routinely carried my handgun pretty much everywhere, and most of the time. I have carried in a number of stores, such as ShopRite, Lowe's and Tractor Supply Co. I carried my gun while at my own store, and I carried a gun while conducting my day to day business, including visiting with friends and family members in homes and other private locations. On many occasions, I have carried my handgun while at restaurants, including ones that serve alcohol.

10. Aside from private establishments, I have also carried my handgun while in parks and while taking my grandchildren to playgrounds. I have carried my handgun while visiting the library. I have also carried my handgun at music events conducted in public arenas and in theaters. I have carried my handgun during appointments with both my physician and the dentist, as well as at other health care facilities. Furthermore, there have also been occasions when I have carried my handgun while attending trade shows at casinos, which are held in conference rooms away from the gambling floors.

11. During the period I have had my permit to carry, I do not recall visiting a museum or a movie theater, or using public transit. However, if I did happen to visit a museum or a movie theater, or to use public transit, then I would want to be able to carry a functional handgun on my person for the purpose of protecting myself.

12. After obtaining my New Jersey permit to carry, I also obtained a handgun license in New York, where my wife and I have a second property. A copy of my New York handgun license is attached as Exhibit 2.

13. Normally, when carrying my handgun as discussed above, I have also carried the gun while driving in my car, or while riding as a passenger in someone else's car. I normally carry my handgun in a holster attached to my body, whether I am in a vehicle or not. If the gun was not on my person, or if it was unloaded, then I would likely not be able to make use of it if someone suddenly attacked me or pulled me from the car. I do not normally load or unload my gun when getting in or out of a car, and I would not consider this a particularly safe practice, particularly in an area that was congested. Among other things, I would be concerned that someone who saw me loading or unloading my gun might call the police.

14. Normally, if I have had plans to go to a place at which handguns are prohibited—such as a school—I have just left my gun at home. It is possible to securely store a handgun in a vehicle, but it is also a hassle, making it easier to leave the gun home most of the time.

15. I am aware that a set of laws has now been enacted that prohibits individuals with permits to carry from carrying handguns in a number of "sensitive places," as well as while in vehicles. It is my understanding that I can no longer carry my handgun while in a car, but must instead transport the handgun unloaded and enclosed in a case. Furthermore, I understand that all private property is now a prohibited sensitive location unless the owner has expressly provided consent. I also understand that there are a number of places, both public and private that are "sensitive places" regardless of consent, including libraries and museums, entertainment facilities such as theaters and arenas, restaurants that serve alcohol, health care facilities, casinos and public transportation hubs.

16. As a result of these new restrictions, I have only a very limited ability to carry a handgun for the purpose of protecting myself. As a practical matter, it seems that I can carry a handgun while walking down the road.

-5-

17. Furthermore, these new restrictions effectively prohibit me from carrying a handgun while I am driving a vehicle or riding in one as a passenger. If I arrived at a location where I could carry a handgun, then I would need to remove my gun from its case and load it, presumably while sitting in the car. When I returned to the car, I would then need to unload the gun and place it back in the case. This simply is not practical.

18. As a result of these new restrictions, and barring intervention by the courts, I have no choice but to stop carrying a handgun away from own home and property. Ironically, the result of the Supreme Court's decision protecting the right to bear arms is that I have largely lost the ability to bear arms that I have had since 2011.

19. I would resume carrying a handgun much more frequently if I did not face the sensitive place and vehicle carry restrictions challenged in this lawsuit. If I could, for example, buy gas or groceries, see my doctor, go to a restaurant, attend a public event or go to a venue like a museum or a theater while armed, then I would be much more likely to resume carrying a handgun again on a regular basis.

    I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: December 24, 2022

Jeffrey M. Muller