**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RONALD KOONS; NICHOLAS GAUDIO;
JEFFREY M. MULLER; SECOND
AMENDMENT FOUNDATION; FIREARMS
POLICY COALITION, INC.; COALITION OF
NEW JERSEY FIREARM OWNERS; and
NEW JERSEY SECOND AMENDMENT
SOCIETY,

       Plaintiffs,

v.

WILLIAM REYNOLDS in his official
capacity as the Prosecutor of Atlantic County,
New Jersey; GRACE C. MACAULAY in her
official capacity as the Prosecutor of Camden
County, New Jersey; ANNEMARIE
TAGGART in her official capacity as the
Prosecutor of Sussex County, New Jersey;
MATTHEW J. PLATKIN, in his official
capacity as Attorney General of the State of
New Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of the
New Jersey State Police,

       Defendants.

No. 1:22-cv-07464-RMB-EAP

## PLAINTIFFS' REPLY BRIEF

David D. Jensen, Esq.
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
david@djensenpllc.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................... 1

I)   The Plaintiffs—Individuals with Permits who Would Otherwise Carry
     Handguns in the "Sensitive Places" at Issue—Plainly Have Standing ......... 2

II)  Defendants Have Not Established the Validity of their Restrictions ............. 6

     a. Location-specific Restrictions ................................................. 7

     b. Ban on Personal Possession in Vehicles ................................... 9

     c. Anti-Carry Presumption ...................................................... 11

III) The Deprivation of the Right to Bear Arms is an Irreparable Injury ........... 12

IV)  Both the Balance of Equities and the Public Interest Mandate the Protection
     of People's Constitutional Rights ............................................. 15

CONCLUSION ................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*American Civil Liberties Union v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003),
  *aff'd*, 542 U.S. 656 (2004) ...................................................................15

*Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997)...................................14

*Antonyuk v. Bruen*, No. 1:22-cv-734, 2022 WL 3999791
  (N.D.N.Y. Aug. 31, 2022) ....................................................................15

*Antonyuk v. Hochul*, No. 1:22-CV-0986, 2022 WL 16744700
  (N.D.N.Y. Nov. 7, 2022) ................................................................. 10-11

*Artway v. Attorney General*, 81 F.3d 1235 (3d Cir. 1998) ...................... 5

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989)...................12

*Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 WL 17100631
  (W.D.N.Y. Nov. 22, 2022) ..............................................................11, 14

*Conchatta, Inc. v. Evanko*, 83 F. App'x 437 (3d Cir. 2003) ...................14

*Def. Distributed v. U.S. Dept. of State*, 121 F. Supp. 3d 680
  (W.D. Tex. 2015) ..................................................................................15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ........................10, 15

*Duncan v. Becerra*, 265 F. Supp. 3d 1106 (S.D. Cal. 2017), *aff'd*,
  742 F. App'x 218 (9th Cir. 2018) ........................................................13

*Ellison v. American Board of Orthopaedic Surgery*,
  11 F.4th 200 (3d Cir. 2021) ...............................................................4-5

*Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) ..................13

*Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136 (D. Haw. 2014).........15

*Grace v. District of Columbia*, 187 F. Supp. 3d 124 (D.D.C. 2016) .....................13

*Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, 146 N.E.3d 254 ..........15

*Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220
  (W.D.N.Y. Nov. 3, 2022) ..................................................................9, 15

*Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989) ...........................................14

*Hope v. Warden York Cnty. Prison*, 956 F.3d 156 (3d Cir. 2020)........................ 2

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), *opinion vacated on reh'g on other grounds*, 47 F.4th 1124 (9th Cir. 2022) ...............................14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..........................................2-3

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)...............................................12

*McDougall v. Cnty. of Ventura*, 23 F.4th 1095 (9th Cir. 2022), *on reh'g en banc*, 38 F.4th 1162 (9th Cir. 2022).....................................14

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374 (3d Cir. 2012) ..........................................................................................14

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2122 (2022).....................................................................*passim*

*Rhode v. Becerra*, 445 F. Supp. 3d 902, 954 (S.D. Cal. 2020), *vacated and remanded on other grounds sub nom. Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119 (9th Cir. Nov. 17, 2022)............................13

*Rigby v. Jennings*, CV 21-1523 (MN), 2022 WL 4448220 (D. Del. Sept. 23, 2022)......................................................................................14

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020).................12

*Steffel v. Thompson*, 415 U.S. 452 (1974) ............................................................. 5

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ........................2, 15

## **Statutes**

1870 Tenn. Acts ch. 13, § 1 ...................................................................................... 8

THE PUBLIC LAWS OF THE STATE OF SOUTH CAROLINA 271 (Grimke, ed. 1790) .................................................................................. 9

## **Other Authorities**

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205 (2018).................................................................... 9

WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2948.1 (3d ed.)....................12

## **INTRODUCTION**

Plaintiffs' moving brief shows that the Second Amendment secures the right to carry handguns outside the home for the purpose of self-defense. The original public understanding of the right allowed for only "exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2122 (2022). Yet, in open defiance of this constitutional right, the State has broadly precluded the public carry of handguns.

The State responds by focusing on standing—an issue that, here, is nothing but a red herring. Tellingly, the State does not even address the merits until page 25 of its brief. And not for nothing, as the historical analogues that the State attempts to rely upon are plainly insufficient to justify the restrictions it has imposed. Indeed, this lack of historical justification is dispositive of the balance of the issues the State raises. Because the right to armed self defense is a right to engage in conduct, money damages are inherently inadequate, and Plaintiffs' injury is irreparable. Just the same, both the public interest and the balance of equities weigh in favor of protecting constitutional rights.

Beyond this, the State attempts to drag things out by claiming that the issue before the Court is merely whether to issue a temporary restraining order—even though the Court already declined to temporarily restrain the law in its order to

show cause. *See* Doc. No. 13 at 2. Now that the parties have briefed the issues and the Court has held a hearing, this Court's order against enforcement would be a preliminary injunction, not a temporary restraining order. *See Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160-61 (3d Cir. 2020). Indeed, the real question is whether any further substantive proceedings are even necessary, or whether the Court should instead issue a permanent injunction against enforcement. *See generally Wrenn v. District of Columbia*, 864 F.3d 650, 668 (D.C. Cir. 2017).

### I) The Plaintiffs—Individuals with Permits who Would Otherwise Carry Handguns in the "Sensitive Places" at Issue—Plainly Have Standing

The Plaintiffs have standing because they "have suffered an injury in fact— an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and quotations omitted). Specifically, the Plaintiffs could previously—until December 22, 2022—carry handguns in each of the "sensitive places" challenged in this lawsuit, as well as in vehicles. However, because section 7 of Chapter 131 now prohibits individuals from carrying guns in these locations, the Plaintiffs can no longer, and they accordingly refrain from doing so. *See* Complaint (Doc. No. 1) at ¶¶ 44-46, 49-51, 55-57. This injury is "fairly traceable" to the Defendants' actions, *see Lujan*, 504 U.S. at 560 (alteration and citation omitted), because the Defendants would prosecute the Plaintiffs if they caught them breaking the new law, *see* Complaint

¶¶ 67-68. And, finally, a favorable decision from this Court would redress the Plaintiffs' injury, *see Lujan*, 504 U.S. at 561 (citations omitted), because the Plaintiffs would resume carrying guns if the Defendants could no longer enforce the challenged restrictions, *see* Complaint ¶¶ 47, 52, 58.

Yet, Defendants contend (p. 10) that Plaintiffs "fail to substantiate—or even allege—concrete plans imminently to visit" the challenged sensitive places. According to Defendants, "[f]or a statement of intent to take future action to support injury in fact, that statement must reflect a concrete intent to do so imminently" (quotation omitted). So, according to Defendants, it is insufficient for the Plaintiffs to assert that they would resume carrying guns in libraries, museums, restaurants that serve alcohol, entertainment venues and on private property, as they did before. Rather, a Plaintiff like Jeff Muller would need to assert that he would (for example) stop for gas at the Wawa located at 1 NJ-15 in Augusta, New Jersey at 1:55 p.m. on January 10, 2023, then visit the main branch of the Sussex County Library located at 125 Morris Turnpike in Newtown, New Jersey from 2:00 p.m. to 2:30 p.m., and then stop for a burger at the Double S Smokehouse, a restaurant that serves alcohol and is located at Skylands Stadium at 94 Championship Place in Augusta, New Jersey from 2:40 p.m. to 3:00 p.m.—and that he would follow his normal practice of carrying a handgun while doing so.

Unsurprisingly, the authorities that Defendants rely upon do not support their claim that this level of specificity is necessary. A good example is *Ellison v. American Board of Orthopaedic Surgery*, 11 F.4th 200 (3d Cir. 2021), where the plaintiff was a California physician who claimed that the policies of a medical board prevented him from "obtain[ing] medical staff privileges and employment at certain hospitals in northern New Jersey," *id.* at 202. However, the physician "ha[d] not attempted to apply for medical staff privileges or taken any concrete steps to practice in New Jersey." *Id.* at 203. Although the court accepted, at least for purposes of discussion, that it would be futile for the physician to apply for hospital staff privileges, he had not established he was otherwise "able and ready" because he had not "plead[ed] that he . . . took some actual steps that demonstrate a real interest in seeking the alleged benefit." *Id.* at 207 (citations omitted). Specifically, he had not "alleged that he ha[d] taken any specific steps that would otherwise position him to practice at those hospitals, *such as obtaining a license to practice medicine in New Jersey*." *Id.* (emphasis added).

This, of course, is not at all the case here. Rather, each of the individual Plaintiffs in this action has obtained a New Jersey permit to carry a handgun, which would (and did) entitle them to carry a handgun in public, but for the newly enacted restrictions at issue. Notably, Defendants do not identify any other concrete steps that the Plaintiffs could have taken, instead attempting to

transmogrify *Ellison* into a requirement that the Plaintiffs plead out minute, and ultimately irrelevant, details related to their planned future actions.

Beyond this, Defendants assert (pp. 13-14) that there is no credible threat of enforcement. But as Defendants acknowledge, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (citation omitted). What's more significant is that Defendants do "not *disavow* the possibility of prosecution." *Artway v. Attorney General*, 81 F.3d 1235, 1248 (3d Cir. 1998) (citation omitted). Defendants do not dispute that they have the statutory obligation to enforce the criminal laws of New Jersey, *see* Complaint ¶¶ 13-17, 67-68, and indeed, they contend (pp. 35-37) that any inability to enforce Chapter 131's prohibitions on carry restrictions would amount to an irreparable injury. Defendants' claim that there is no credible threat of enforcement is thus nothing more than Defendants' attempt to have their cake and eat it, too—and it provides no basis for avoiding judicial review.

Finally, Defendants claim (pp. 14-16) that there is no redressability due to the possibility that private property owners might choose to exclude firearms. But notably, aside from averring that "[m]any establishments independently prohibit firearms" (a proposition for which they point to three such establishments) this just ignores the showing that Plaintiffs have already made. All of the Plaintiffs have

testified that, up until December 22, 2022, they routinely carried firearms in a number of private and public establishments that did not prohibit firearms—and that but for Chapter 131, they would still be doing so. Thus, even if some New Jersey establishments might choose to exclude firearms, the Plaintiffs would be able to carry everywhere else—but for Chapter 131's proscriptions.

**II)  Defendants Have Not Established the Validity of their Restrictions**

Plaintiffs' moving brief showed (pp. 16-32) that Plaintiffs are likely to succeed on the merits because the challenged prohibitions substantially preclude the bearing of arms in a manner that lacks historical grounding. Laws that proscribe the keeping and bearing of arms are presumptively unconstitutional, unless "[t]he government . . . justif[ies] its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130; *see* Plfs. Br. p. 16. The Supreme Court's decision in *Bruen* left no room for doubt: when the State seeks to establish where "one [can] not carry arms," including its designation of certain areas as "sensitive places," the State must "affirmatively prove" that such restrictions are consistent with the American tradition of firearms regulation. *See id*. at 2127, 2156. In response, the State attempts to analogize the challenged "sensitive place" prohibitions to a smattering of historical restrictions. But the attempt that fails, as the historical laws that the State points to are apples and oranges from the laws at issue here.

-6-

### a. Location-specific Restrictions

The State fails to identify any "relevantly similar" restrictions on carrying firearms from the Founding. It is undisputed that *all* of these locations existed at the Founding, *see* Plfs. Br. pp. 21-23, yet the State points to *zero* regulations banning firearm possession here. All the State points to is a variation on the Statute of Northampton enacted in Virginia, which *Bruen* discussed extensively. The Supreme Court explained that these statutes limited carrying "in a way that spreads 'fear' or 'terror' among the people." 142 S. Ct. at 2145. Of course, the State has not so limited its restrictions to carrying "in terror of the county." State Ex. 6.

And the State's other evidence comes too late. Left with no Founding Era evidence, the State makes the novel claim that, not only should this court consider Reconstruction Era evidence, it should *prioritize* such evidence. That position finds no support in *Bruen* or any other Supreme Court precedent. *See* Plfs. Br. pp. 19-20 (collecting cases). Instead, all historical interpretation of the Constitution must center on the Founding; later evidence can only confirm what the Founding proves.

Beyond that, the State's anachronistic evidence is insufficient. The State cites restrictions enacted by a few states in the Reconstruction Era, which were all discussed by *Bruen*. Texas was an "outlier," "provid[ing] little insight into how postbellum courts viewed the right to carry protected arms in public." *Bruen*, 142

S. Ct. at 2153. Both Tennessee[1] and Missouri seem to have interpreted their State's carry restrictions to allow open carry, thus providing at least one avenue for the exercise of Second Amendment rights. *Bruen*, 142 S. Ct. at 2147 (discussing Tennessee); *id.* at 2155 n.30 (citing Missouri). New Jersey provides none. And the other two statewide enactments cited by the State are in relation to its ban on carrying in bars and restaurants that serve alcohol. Neither is a sufficient analogue. Connecticut did not regulate individual behavior regarding firearms at all, and Kansas only banned possession of firearms while intoxicated. Thus, Kansas banned *drinking* to the point of intoxication in these places, but not *carrying*. These are not relevantly similar.[2]

Fourth, the State asserts a broad power to ban carrying firearms on anything labeled government property. This proves too much—governments own sidewalks and streets too, but they cannot simply ban firearms there. *See Bruen*, 142 S. Ct. at 2135. That is because what is relevant is not the mere fact of government ownership. Instead, *Bruen* gave specific examples of types of government

---

[1] It is not clear that the 1869 enactment cited by the State could even constitute an "enduring" enactment in that state as Tennessee enacted new (and seemingly superseding) legislation in 1870. *See* 870 Tenn. Acts ch. 13, § 1.

[2] The State's citation to a New Orleans regulation cannot establish a tradition of restricting firearms as the Court cannot stake its interpretation of the Second Amendment on a "single city['s]" enactment. *Bruen*, 142 S. Ct. at 2154.

buildings where firearms could be prohibited: "legislative assemblies, polling places, and courthouses." By "analogies to *those* historical regulations," the State can potentially justify new sensitive places. *Id.* at 2133 (emphasis added). What is relevant about those places is the long tradition of the government providing comprehensive security, *see e.g.* THE PUBLIC LAWS OF THE STATE OF SOUTH CAROLINA 271 (Grimke, ed. 1790), and the fact each place historically "concentrate[s] adversarial conflict" as part of democratic governance or reflects locations where government officials are "at acute personal risk of being targets of assassination." David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205, 290 (2018); *see also Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220, *14 (W.D.N.Y. Nov. 3, 2022). While the degree to which such characteristics apply to government-owned property will vary, none of the above apply to locations challenged here. No democratic functions of government occur there, and these are not "typically secured locations" where a uniform lack of firearms is assured by government security. *Hardaway*, 2022 WL 1664620, at *14.

### b.  Ban on Personal Possession in Vehicles

The State's defense of its ban on personal possession of firearms in vehicles fares no better. The State argues that the right to carry has not been violated because a firearm can still be stored in a trunk. But the Second Amendment

protects the right to "'bear arms'" meaning "to 'wear, bear, or carry. . . *upon the person* or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Bruen*, 142 S. Ct. at 2134 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008)). That right has been denied if a firearm is locked and inoperable, *i.e.*, made "impossible for citizens to use them." *Heller*, 554 U.S. at 630.

The State does not attempt to identify any analogues to possession in or on any mode of transportation at the Founding or during Reconstruction. Instead, the State cites non-analogous laws discussed above, *see supra*, and a single Iowa statute related to "present[ing] or discharg[ing]" a firearm "*at* any railroad train." Shooting a firearm "*at*" a vehicle is meaningfully different than possessing a firearm in or on a vehicle for purposes of self-defense. And the State's citations to cases interpreting "journey" exceptions narrowly do not help it either as (1) journey exceptions far exceed those cited by the State, *Antonyuk v. Hochul*, No. 1:22-CV-0986, 2022 WL 16744700, *66 n.109 (N.D.N.Y. Nov. 7, 2022), and (2) *Bruen* explained how in each one of the cited states, the laws did not "altogether prohibit public carry," as New Jersey does. *See Bruen*, 142 S. Ct. at 2146 (Alabama); *id*. at 2147 n. 20 (Arkansas); *id*. at 2147 (Tennessee).

The State is left with twentieth century regulations that, not only come too late, *id.* at 2154 n.28, but actually prove that New Jersey's ban is not historically

justified. Both Maine's and Iowa's statutes did not ban personal possession of handguns for self-defense in vehicles. *See* State Ex 16 (exempting "pistol[s] or revolver[s]"); State Ex. 17 (applying to "rifle[s]," "shotguns" and "hunting from automobiles."). They did not burden the right to carry handguns for self-defense.

### c.  Anti-Carry Presumption

The State offers almost no argument regarding historical precedents to justify its new default anti-carry rule on all private property throughout the State. As two courts have already held with respect to New York's very similar (and equally unconstitutional) anti-carry presumption, the State's identified statutes are not sufficient to establish a tradition to "bar[] all license holders from carrying *concealed* handguns in virtually *every commercial building*" and all other private property now. *Antonyuk*, 2022 WL 16744700, at *79–81. It is no defense that the State simply picked between two default rules because "the scope of the right codified in the Second Amendment demonstrates that this society—this nation—has historically had" the rule that carrying is "generally permitted absent the owner's prohibition." *Christian v. Nigrelli*, No. 22-CV-695 (JLS), 2022 WL 17100631, *9 (W.D.N.Y. Nov. 22, 2022). "[T]he State's current policy preference" for a new rule "is one that, because of the interest balancing already struck by the people and enshrined in the Second Amendment, is no longer on the table." *Id*.

### III)   The Deprivation of the Right to Bear Arms is an Irreparable Injury

When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary." WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2948.1 (3d ed.) (collecting cases). As the Supreme Court has recently explained, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). The same must be true for the loss of Second Amendment rights. First, there is no "hierarchy of constitutional rights." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 628 (1989). Since the Second Amendment is not a "second-class right," the same presumption that "unquestionably" applies in the First Amendment context must govern the irreparability analysis in Second Amendment cases. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2156 (2022) (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality)). To hold otherwise would be to impermissibly "subject" the Second Amendment "to an entirely different body of rules than the other Bill of Rights guarantees." *Id.*

Second, the Second Amendment protects fundamental, intangible interests—much like the First Amendment—and such interests are quintessentially irremediable by damages and are irreparable after the fact. *Ezell v. City of Chicago*,

-12-

651 F.3d 684, 699 (7th Cir. 2011) (internal quotation marks omitted). The Second Amendment protects the right to bear arms for self-defense, which is to say to be "armed *and ready* for offensive or defensive action in a case of conflict with another person." *Bruen*, 142 S. Ct. at 2134 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 584 (2008)) (emphasis added). Because this is a right "*for* self-defense," it is "a right that can be infringed upon whether or not plaintiffs are ever actually called upon to use their weapons to defend themselves." *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (D.D.C. 2016). When one needs to defend herself, family, or property right now, but is defenseless," that "is the heaviest kind of irreparable harm." *Rhode*, 445 F. Supp. 3d at 954.

Additionally, "the right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence—and psychic comfort—that comes with knowing one could protect oneself if necessary." *Id*. One cannot regain that peace of mind or readiness after the fact or after the time when such self-defense readiness proves necessary. "[L]oss of that peace of mind . . . and the loss of enjoyment of Second Amendment rights constitutes irreparable injury." *Rhode v. Becerra*, 445 F. Supp. 3d 902, 954 (S.D. Cal. 2020), *vacated and remanded on other grounds sub nom. Rhode v. Bonta*, No. 20-55437, 2022 WL 17099119 (9th Cir. Nov. 17, 2022); *see also Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017), *aff'd*, 742 F. App'x 218, 200 n.1 (9th Cir. 2018).

The Third Circuit's decisions in *Hohe v. Casey*, 868 F.2d 69 (3d Cir. 1989), *Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997), and *Conchatta, Inc. v. Evanko*, 83 F. App'x 437 (3d Cir. 2003), are not to the contrary as each involved instances where the plaintiffs lacked an ongoing threat of harm. In *Hohe*, the plaintiffs had not been "chilled" from speaking. In *Anderson*, the government had stopped surveilling. And, in *Conchatta*, the dancers had not alleged a credible threat of enforcement. Here, by contrast, the challenged laws are actively impacting the Plaintiffs, as they are no longer exercising their Second Amendment right to bear arms in public. *See* Koons Dec. ¶ 12; Gaudio Dec. ¶¶ 14-16; Muller Dec. ¶¶ 16-18. And, there *is* a credible threat of enforcement. *See supra* Part I. When individuals face a choice of compliance or "prosecution and fines for noncompliance," as Plaintiffs do here, that is irreparable injury. *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388 (3d Cir. 2012); *see also Rigby v. Jennings*, CV 21-1523 (MN), 2022 WL 4448220, at *11 (D. Del. Sept. 23, 2022).

Accordingly, notwithstanding the State's arguments, this Court should join the many courts around the country to hold that Plaintiffs' Second Amendment injuries are irreparable. *McDougall v. Cnty. of Ventura*, 23 F.4th 1095, 1112 (9th Cir. 2022), *on reh'g en banc*, 38 F.4th 1162 (9th Cir. 2022); *Jones v. Bonta*, 34 F.4th 704, 732 (9th Cir. 2022), *opinion vacated on reh'g on other grounds*, 47 F.4th 1124 (9th Cir. 2022); *Christian*, 2022 WL 17100631 at *10; *Hardaway*, 2022

-14-

WL 16646220 at *17 (W.D.N.Y. Nov. 3, 2022); *Antonyuk v. Bruen*, No. 1:22-cv-734, 2022 WL 3999791, *36 (N.D.N.Y. Aug. 31, 2022); *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 52, 146 N.E.3d 254, 277; *Def. Distributed v. U.S. Dept. of State*, 121 F. Supp. 3d 680, 689 (W.D. Tex. 2015); *Fotoudis v. City & Cnty. of Honolulu*, 54 F. Supp. 3d 1136, 1145 (D. Haw. 2014).

### IV) Both the Balance of Equities and the Public Interest Mandate the Protection of People's Constitutional Rights

The State claims an interest (pp. 36-37) in countering safety risks that it claims will follow inherently from "expanding handgun carrying." But this attempt to balance the right to bear arms, an explicit constitutional right, against claimed societal harms is foreclosed, as the Second Amendment "is the very *product* of an interest balancing by the people." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). "[N]either the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law." *American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251 n.11 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004). Because the issue here is the ability to engage in conduct that lies at the core of an enumerated right, analysis begins and ends with the merits. *See Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017) (citation omitted).

## CONCLUSION

The Court should grant a preliminary injunction against enforcement of the ban on carrying handguns in the challenged "sensitive places" and in vehicles.

Dated:      January 3, 2023

s/ David D. Jensen
David D. Jensen
DAVID JENSEN PLLC
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
Fax: 914.591.1318
david@djensenpllc.com