# EXHIBIT G

ASSEMBLY OVERSIGHT, REFORM AND FEDERAL RELATIONS COMMITTEE

STATEMENT TO

[Second Reprint]
**ASSEMBLY, No. 4769**

with committee amendments

# STATE OF NEW JERSEY

DATED: OCTOBER 24, 2022

The Assembly Oversight, Reform and Federal Relations Committee reports favorably and with committee amendments Assembly Bill No. 4769 (2R).

As amended by the committee, Assembly Bill No. 4769 removes from current law the justifiable need standard, which is the standard an individual is required to meet to hold a permit to carry a handgun in this State, in accordance with a recent decision of the United States Supreme Court in New York State Rifle & Pistol Association v. Bruen. In addition, the bill establishes certain criteria for obtaining a permit to carry a handgun and codifies certain venues at which the right to carry firearms would be restricted due to security and safety concerns.

Under current law, in order to lawfully carry a handgun in public, it is necessary for a private citizen to obtain a permit to carry a handgun. Applicants for a permit to carry a handgun need the approval of the chief of police in the municipality where they reside and the approval of a Superior Court judge in the county where they reside. Approval is contingent upon a person submitting, along with the application, a written certification establishing justifiable need. Justifiable need is defined as the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun. This bill eliminates the justifiable need standard.

The bill also expands the disqualifying criteria that would prohibit a person from obtaining a firearms purchaser identification card (FPIC), permit to purchase a handgun (PPH), or permit to carry a handgun. Under current law, a person who receives these documents is required to be of "good character" and "good repute" in the community and not subject to any of the disqualifying criteria listed in subsection c. of N.J.S.2C:58-3. This bill removes the "good character" and "good repute" criteria and revises the standard to require the issuance of an FPIC or PPH, unless the applicant is known in the community in which the

2

person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others, or is subject to any of the disabilities set forth in current law. The bill expands the list of disqualifying criteria to include:

- persons presently confined for a mental disorder as a voluntary admission or involuntary commitment for inpatient or outpatient treatment;
- persons who have violated a temporary or final restraining order issued pursuant to the "Prevention of Domestic Violence Act of 1991" or a temporary or final domestic violence restraining order issued in another jurisdiction prohibiting the person from possessing any firearm;
- persons who are subject to or have violated a temporary or final restraining order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015";
- persons who have previously been voluntarily admitted or involuntarily committed to inpatient or outpatient mental health treatment, unless the court has expunged the person's record;
- persons who are subject to an outstanding arrest warrant for an indictable crime in this State or for a felony in any other state or federal jurisdiction. This provision would not include individuals seeking reproductive health care services in this State;
- persons who are a fugitive from justice due to having fled from any state or federal jurisdiction to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding. This provision would not include individuals seeking reproductive health care services in this State; and
- persons who are convicted of a fourth degree crime for violating the handgun carry requirements established under the bill.

The bill also makes several changes to the procedure for applying for an FPIC or PPH. Under the bill, an applicant would be required to provide any aliases or other names previously used by the applicant. A PPH applicant also would be required to certify with respect to each handgun listed on the form, whether the applicant is purchasing the handgun on the applicant's own behalf or, if not, on behalf of a third party. In addition, the bill increases the fee to obtain an FPIC from two dollars to $25. The fee for the PPH would be increased from five dollars to $50.

In addition, this bill renders a recent enactment (P.L.2022, c.58), which requires FPICs to display a picture and thumb print, inoperative until the Superintendent of State Police establishes a system for issuing these cards. The bill also clarifies that the FPIC would be electronically linked to the fingerprints of the card holder, rather than displaying a thumb print.

3

The bill also codifies the electronic method for reporting handgun sales. Under current law, the PPH is issued as a quadruplicate document. A firearm retailer is required to complete all four of the documents prior to selling a handgun and send the first copy to the Superintendent of State Police and the second copy to the chief of police of the municipality in which the purchaser resides. The third copy is retained by the retail dealer and may be subject to inspection by law enforcement at any reasonable time. The purchaser retains the fourth copy as a permanent record. This bill codifies the current procedure established by the State Police, which established a web portal for electronically reporting handgun sales. The bill also requires that handgun transfers between or among immediate family members, law enforcement officers, or collectors of firearms or ammunition as curios or relics are to be conducted via the web portal.

In addition, the bill revises the application process for obtaining a permit to carry a handgun. Under current law, a person applying for a permit to carry a handgun is required to provide endorsements from three people who have known the applicant for at least three years and can attest that he or she is of good moral character and behavior. The bill requires an applicant to provide endorsements from five people who are unrelated to the applicant. The persons providing the endorsement are to provide relevant information, including the nature and extent of their relationship with the applicant and information concerning their knowledge of the applicant's use of drugs or alcohol. The bill also requires the chief of police or superintendent, as appropriate, to interview the applicant and persons providing the endorsement. The interviewer is to inquire whether the applicant is likely to engage in conduct that would result in harm to the applicant or others. Additionally, the interviewer is to inquire whether the applicant has any history of threats or acts of violence by the applicant directed toward self or others or any history of use, attempted use, or threatened use of physical force by the applicant against another person, or other incidents implicating the criteria that would disqualify a person from obtaining an FPIC or PPH. The chief of police or the superintendent also may require information from the applicant or any other person pertaining to publicly available statements posted or published online by the applicant. The bill also extends from 60 to 90 days the time frame which the superintendent or chief of police is required to approve or deny an application for a permit to carry a handgun.

The bill also requires the Superintendent of State Police to establish a training requirement in the lawful and safe handling and storage of firearms for persons who obtain a permit to carry a handgun. The training requirement is to consist of an online course of instruction, in-person classroom instruction, and target training. The training is to include, but not be limited to, demonstration of a level of proficiency in the use of a handgun in such manner as required by the

4

superintendent and training on justification in the use of deadly force under State law. The bill requires the training to include demonstration of a level of proficiency in the use of a handgun in a manner as may be required by the superintendent and training on justification in the use of deadly force under State law. A person who obtained a permit to carry a handgun prior to the bill's effective date would be required to complete the classroom instruction and target training within 90 days of the bill's effective date.

In addition, the application fee for the permit to carry a handgun would be $200. In the case of an application made to the chief police officer of a municipality, $150 of the fee is to be retained by the municipality and the remaining $50 is to be forwarded to the superintendent. The fee amount retained by the municipality is to be used to defray the costs of investigation, administration, and processing of the permit to carry handgun applications. Application fees made to the superintendent are to be deposited into the Victims of Crime Compensation Office account. The bill also provides that mayors and elected members of a municipal governing body are to apply to the superintendent, rather than the chief law enforcement officer, when applying for a permit to carry a handgun. As amended, the bill allows the superintendent or chief law enforcement officer to solicit such other identification information as may be authorized by the superintendent to the conduct a comparable criminal history records check for applicant who have already undergone a criminal history records check in the course of obtaining a FPIC or PPH.

Under the bill, the permit would be issued to the applicant electronically through email or through the web portal established or designated for this purpose by the superintendent, or in such form or manner as may be authorized by the superintendent. Prior to issuing the permit, the chief of police or superintendent is required to determine whether:
- the applicant is a person of good character who is not subject to any of the disabilities prohibiting the person from purchasing a firearm;
- has not been convicted of a crime of the fourth degree in violation of the carry permit requirements established by the bill;
- is thoroughly familiar with the safe handling and use of handguns; and
- is in compliance with the liability insurance requirement established by the bill.

The bill requires a private citizen who obtains a carry permit to obtain liability insurance. Under the bill, applications for a permit to carry handguns are to include proof of liability insurance coverage and a certification that the applicant will maintain the insurance coverage for the duration of the permit. The bill requires the liability insurance coverage to insure against loss resulting from liability imposed by law

5

for bodily injury, death, and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a firearm carried in public. The bill requires the insurance coverage to be at least in:

- an amount or limit of $100,000, exclusive of interest and costs, on account of injury to, or death of, one person, in any one incident;
- an amount or limit, subject to such limit for any one person so injured or killed, of $300,000, exclusive of interest and costs, on account of injury to or death of, more than one person, in any one incident; and
- an amount or limit of $25,000, exclusive of interest and costs, for damage to property in any one incident.

The holder of a permit to carry a handgun would be required to produce proof of liability insurance within a reasonable amount of time following any injury, death, or property damage alleged to have been caused by the person carrying the handgun in public.

In addition, the bill requires persons who obtain a permit to carry a handgun to adhere to certain requirements. Under the bill, a person with a carry permit would be prohibited from:

- using or consuming alcohol, a cannabis item, or a controlled substance while carrying a handgun;
- being under the influence of alcohol, cannabis, or a controlled substance while carrying a handgun;
- carrying a handgun not authorized under the permit;
- carrying a handgun outside of a holster or in an unauthorized holster;
- carrying more than two firearms under the permittee's control at one time;
- engaging in an unjustified display of a handgun; or
- if carrying a handgun in public, failing to display the permit to carry a handgun and proof of liability insurance upon request of a law enforcement officer.

A person who violates these requirements would be guilty of a crime of the fourth degree. A violation also may serve as sufficient grounds for revocation of a permit to carry a handgun.

The bill provides that a permit holder, when stopped by a law enforcement officer while publicly carrying the handgun or transporting it in motor vehicle, would be required to immediately disclose to the officer that the permit holder is carrying or transporting a handgun and display the permit to carry a handgun. A person who fails to disclose to a law enforcement officer that the person is carrying a handgun would be guilty of a fourth degree crime. A person who fails to display a permit to carry a handgun would be guilty of a disorderly persons offense and subject to a $100 fine and guilty of a crime of the fourth degree for a second or subsequent offense. In addition, a permit holder who is carrying a handgun in public and is

6

detained by a law enforcement officer as part of a criminal investigation would be required to provide the handgun to the officer for the purposes of inspection. A person who fails to provide the handgun would be guilty of a crime of the fourth degree.

The bill also delineates places in which a person would be prohibited from carrying a handgun. The amended bill clarifies that it would be a de minimis infraction for which a person would not be prosecuted if the entry onto one of the prohibited locations was a brief, incidental entry onto property. Under the bill, it would be a third degree crime to carry any firearm or weapon in the following locations:

- a place owned, leased, or under the control of State, county, or municipal government used for the purpose of government administration, including but not limited to police stations;
- a courthouse, courtroom, or any other premises used to conduct judicial or court administrative proceedings or functions;
- a State, county, or municipal correctional or juvenile justice facility, jail and any other place maintained by or for a governmental entity for the detention of criminal suspects or offenders;
- a State-contracted half-way house;
- a location being used as a polling place during the conduct of an election;
- a place where a public gathering, demonstration, or event is held for which a government permit is required, during the conduct of such gathering, demonstration, or event;
- a school, college, university, or other educational institution and on any school bus;
- a child care facility, including a day care center;
- a nursery school, pre-school, zoo, or summer camp;
- a park, beach, recreation facility, or area or playground owned or controlled by a State, county or local government unit;
- at youth sports events during and immediately preceding and following the conduct of the event;
- a publicly owned or leased library or museum;
- a shelter for the homeless, emergency shelter for the homeless, basic center shelter program, shelter for homeless or runaway youth, children's shelter, child care shelter, shelter for victims of domestic violence, or any shelter licensed by or under the control of the Juvenile Justice Commission or the Department of Children and Families;
- a community residence for persons with developmental disabilities, head injuries, or terminal illnesses, or any other residential setting licensed by the Department of Human Services or Department of Health;

7

- a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises;
- a Class 5 Cannabis retailer or medical cannabis dispensary, including any consumption areas licensed or permitted by the Cannabis Regulatory Commission;
- a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack, or other place where performances, concerts, exhibits, games, or contests are held;
- a casino and related facilities, including but not limited to appurtenant hotels, retail premises, restaurant, and bar facilities, and entertainment and recreational venues located within the casino property;
- a plant or operation that produces, converts, distributes, or stores energy or converts one form of energy to another;
- an airport or public transportation hub;
- a health care facility and any facility licensed or regulated by the Department of Human Service, Department of Children and Families, or Department of Health, other than a health care facility, that provides addiction or mental health treatment or support services;
- within 100 feet of a public location being used for making motion picture or television images for theatrical, commercial or educational purposes, during the time such location is being used for that purpose;
- private property, including but not limited to residential, commercial, industrial, agricultural, institutional, or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun with a valid and lawfully issued permit to carry; and
- any other place in which the carrying of a handgun is prohibited by statute or rule or regulation promulgated by a federal or State agency or by municipal ordinance or regulation

As amended, the bill allows municipalities to prohibit carrying a weapon, by ordinance or regulation, in a place which is not enumerated in the bill's list of prohibited locations if there is a public safety nexus justifying the prohibition and the prohibition is consistent with the nation's historical tradition of firearm regulation.

The limitation on places in which a person would be prohibited from carrying a handgun would not apply to active or retired law enforcement officers. However, retired law enforcement officer would be prohibited from carrying a handgun in eight of those locations unless the entity responsible for security at the location has affirmatively authorized the retired officer to carry a handgun. The nine locations include: government buildings; courthouses;

8

correctional facilities; locations used as polling places; within 100 feet of a public gathering demonstration, or event is held for which a government permit is required; schools, universities, and school buses; childcare centers; healthcare facilities.

The bill also requires the holder of a permit to carry a handgun to adhere to certain requirements while transporting the handgun in a vehicle.

COMMITTEE AMENDMENTS

The committee amended the bill to:

1) clarify that a permit holder when stopped in a motor vehicle by a law enforcement officer is to inform the officer that the permit holder is traveling with a handgun and display the permit to carry a handgun;

2) allow the Superintendent of State Police or chief law enforcement officer to solicit such other identification information as may be authorized by the superintendent to conduct a comparable criminal history records check for applicant who have already undergone a criminal history records check in the course of obtaining a FPIC, PPH, or PCH;

3) clarify that it would be a de minimis infraction for which a person would not be prosecuted if the entry onto one of the prohibited locations was a brief, incidental entry onto property;

4) remove a provision of the bill prohibiting retired law enforcement officers from entering private property while carrying a handgun; and

5) allow municipalities to prohibit, by ordinance or regulation, a person from carrying a weapon in a prohibited location which is not enumerated in the bill's list of prohibited locations if there is a public safety nexus justifying the prohibition and the prohibition is consistent with the nation's historical tradition of firearm regulation; and

6) make technical corrections.