# EXHIBIT H

SENATE BUDGET AND APPROPRIATIONS COMMITTEE

STATEMENT TO

ASSEMBLY COMMITTEE SUBSTITUTE FOR
**ASSEMBLY, No. 4769**

# STATE OF NEW JERSEY

DATED: DECEMBER 5, 2022

The Senate Budget and Appropriations Committee reports favorably Assembly Bill No. 4769 ACS.

As reported by the committee, this bill removes from current law the justifiable need standard, which is the standard an individual is required to meet to hold a permit to carry a handgun in this State, in accordance with a recent decision of the United States Supreme Court in New York State Rifle & Pistol Association v. Bruen.  In addition, the bill establishes certain criteria for obtaining a permit to carry a handgun and codifies certain venues at which the right to carry firearms and certain destructive devices would be restricted due to security and safety concerns.

Under current law, in order to lawfully carry a handgun in public, it is necessary for a private citizen to obtain a permit to carry a handgun. Applicants for a permit to carry a handgun need the approval of the chief of police in the municipality where they reside and the approval of a Superior Court judge in the county where they reside. Approval is contingent upon a person submitting, along with the application, a written certification establishing justifiable need. Justifiable need is defined as the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun.  This bill eliminates the justifiable need standard.

The bill also expands the disqualifying criteria that would prohibit a person from obtaining a firearms purchaser identification card (FPIC), permit to purchase a handgun (PPH), or permit to carry a handgun.  Under current law, a person who receives these documents is required to be of "good character" and "good repute" in the community and not subject to any of the disqualifying criteria listed in subsection c. of N.J.S.2C:58-3.  This bill removes the "good character" and "good repute" criteria and revises the standard to require the issuance of an FPIC or PPH, unless the applicant is known in the community in which the person lives as someone who has engaged in acts or made statements suggesting the person is likely to engage in conduct, other than justified self-defense, that would pose a danger to self or others, or is subject to any of the disabilities set forth in current law.  The bill expands the list of disqualifying criteria to include:

2

- persons presently confined for a mental disorder as a voluntary admission or involuntary commitment for inpatient or outpatient treatment pursuant to the mental health screening law concerning assessments of persons believed to be in need of involuntary commitment to treatment, P.L.1987, c.116 (C.30:4-27.1 et seq.);
- persons who are subject to or have violated a temporary or final restraining order issued pursuant to the "Sexual Assault Survivor Protection Act of 2015";
- persons who have previously been voluntarily admitted or involuntarily committed to inpatient or outpatient mental health treatment, unless the court has expunged the person's record;
- persons who are subject to an outstanding arrest warrant for an indictable crime in this State or for a felony in any other state or federal jurisdiction. This provision would not include individuals seeking reproductive health care services in this State; and
- persons who are a fugitive from justice due to having fled from any state or federal jurisdiction to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding. This provision would not include individuals seeking reproductive health care services in this State.

The bill also makes several changes to the procedure for applying for an FPIC or a PPH. Under the bill, an applicant would be required to provide any aliases or other names previously used by the applicant. A PPH applicant also would be required to certify with respect to each handgun listed on the form, whether the applicant is purchasing the handgun on the applicant's own behalf or, if not, on behalf of a third party. In addition, the bill increases the fee to obtain an PPH from two dollars to $25. The fee for the FPIC would be increased from five dollars to $50.

In addition, this bill renders a recent enactment (P.L.2022, c.58), which requires FPICs to display a picture and thumb print, inoperative until the Superintendent of State Police establishes a system for issuing these cards. The bill also clarifies that the FPIC would be electronically linked to the fingerprints of the card holder, rather than displaying a thumb print.

The bill also expands the list of officials who are allowed to carry a firearm at all times in this State. Under current law, county and assistant prosecutors and deputy attorneys general are permitted to carry a firearm at all times in this State. The bill extends this privilege to federal and municipal prosecutors, the Attorney General, and assistant attorneys general. In addition, the bill allows federal, State, and county judges, including judges in Tax Court, Office of Administrative Law, and the Division of Workers' Compensation to carry a firearm at all times.

3

The bill also codifies the electronic method for reporting handgun sales. Under current law, the PPH is issued as a quadruplicate document. A firearm retailer is required to complete all four of the documents prior to selling a handgun and send the first copy to the superintendent and the second copy to the chief of police of the municipality in which the purchaser resides. The third copy is retained by the retail dealer and may be subject to inspection by law enforcement at any reasonable time. The purchaser retains the fourth copy as a permanent record. This bill requires the establishment of a web portal within six months of the bill's enactment for electronically reporting handgun sales. The bill also requires that handgun transfers between or among immediate family members, law enforcement officers, or collectors of firearms or ammunition as curios or relics be conducted via the web portal. In addition, the bill clarifies that a chief police officer or the Superintendent of State Police may delegate to subordinate officers the responsibilities of approving and issuing permits to carry a handgun and FPICs and PPHs.

In addition, the bill revises the application process for obtaining a permit to carry a handgun. Under current law, a person applying for a permit to carry a handgun is required to provide endorsements from three people who have known the applicant for at least three years and can attest that he or she is of good moral character and behavior. The bill requires an applicant to provide endorsements from four people who are unrelated to the applicant. The persons providing the endorsement are to provide relevant information, including the nature and extent of their relationship with the applicant and information concerning their knowledge of the applicant's use of drugs or alcohol. The bill also requires the chief police officer or superintendent, as appropriate, to interview the applicant and persons providing the endorsements. The interviewer is to inquire whether the applicant is likely to engage in conduct that would result in harm to the applicant or others. Additionally, the interviewer is to inquire whether the applicant has any history of threats or acts of violence by the applicant directed toward self or others or any history of use, attempted use, or threatened use of physical force by the applicant against another person, or other incidents implicating the criteria that would disqualify a person from obtaining a FPIC or PPH. The chief police officer or the superintendent also may require information from the applicant or any other person pertaining to publicly available statements posted or published online by the applicant. The bill extends from 60 to 90 days the time frame which the superintendent or chief police officer is required to approve or deny an application for a permit to carry a handgun.

The bill also requires the superintendent to establish a training requirement in the lawful and safe handling and storage of firearms for persons who obtain a permit to carry a handgun. The training requirement is to be established within six months of the bill's

4

enactment and consist of an online course of instruction, in-person classroom instruction, and target training. The bill requires the training to include demonstration of a level of proficiency in the use of a handgun in a manner as may be required by the superintendent and training on justification in the use of deadly force under State law. A person who obtained a permit to carry a handgun within six months following the bill's date of enactment and prior to the establishment of the training requirement would be required to complete the training within 10 months of the bill's date of enactment.

The application fee for the permit to carry a handgun would be $200 under the bill. In the case of an application made to the chief police officer of a municipality, $150 of the fee is to be retained by the municipality and the remaining $50 is to be forwarded to the superintendent. The fee amount retained by the municipality is to be used to defray the costs of investigation, administration, and processing of the permit to carry handgun applications. Application fees made to the superintendent are to be deposited into the Victims of Crime Compensation Office account. However, the bill removes from current law a $20 fee imposed by the county clerk.

The bill also provides that mayors and elected members of a municipal governing body are to apply to the superintendent, rather than the chief police officer, when applying for a permit to carry a handgun. In addition, the bill allows the superintendent or chief police officer to solicit such other identification information as may be authorized by the superintendent to conduct a comparable criminal history records check for applicants who have already undergone a criminal history records check in the course of obtaining a FPIC or PPH.

Under the bill, the permit would be issued to the applicant electronically through email or six months after the bill's enactment through the web portal established or designated for this purpose by the superintendent, or in such form or manner as may be authorized by the superintendent. The chief police officer or superintendent is to issue the permit if the applicant:

- has not engaged in any acts or made any statements that suggest the applicant is likely to engage in conduct, other than lawful self-defense, that would pose a danger to the applicant or others and who is not subject to any of the disabilities prohibiting the applicant from purchasing a firearm;
- is thoroughly familiar with the safe handling and use of handguns;
- has completed the training requirements established by the bill; and
- is in compliance with the liability insurance requirements established by the bill.

5

The provisions of the bill requiring the chief police officer or superintendent to verify the training requirement and liability insurance are to remain inoperative for six months following the bill's enactment.

The bill requires a private citizen who obtains a carry permit to obtain liability insurance. Under the bill, applications for a permit to carry handguns are to include proof of liability insurance coverage. The bill requires the liability insurance coverage to insure against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a firearm carried in public. The bill requires the insurance coverage to be at least in an amount or limit of $300,000, exclusive of interest and costs, on account of injury to, or death of, more than one person and damage to property, in any one incident.

The holder of a permit to carry a handgun would be required to produce proof of liability insurance within a reasonable amount of time following any injury, death, or property damage alleged to have been caused by the person carrying the handgun in public.

In addition, the bill requires persons who obtain a permit to carry a handgun to adhere to certain requirements. Under the bill, a person with a carry permit would be prohibited from:
- using or consuming alcohol, a cannabis item, or a controlled substance while carrying a handgun;
- being under the influence of alcohol, cannabis, or a controlled substance while carrying a handgun;
- carrying a handgun outside of a holster or in an unauthorized holster;
- carrying more than two firearms under the permittee's control at one time; or
- engaging in an unjustified display of a handgun.

A person who violates these requirements would be guilty of a crime of the fourth degree. A violation is to serve as sufficient grounds for revocation of a permit to carry a handgun.

The bill provides that a permit holder, when stopped or detained by a law enforcement officer while publicly carrying the handgun or transporting it in a motor vehicle, would be required to immediately disclose to the officer that the permit holder is carrying or transporting a handgun and display the permit to carry a handgun. A person who fails to disclose to a law enforcement officer that the person is carrying a handgun would be guilty of a fourth degree crime. A person who fails to display a permit to carry a handgun would be guilty of a disorderly persons offense and subject to a $100 fine for a first offense and guilty of a crime of the fourth degree for a second or subsequent offense. In addition, a permit holder who is carrying a handgun in public and is detained by a law enforcement officer as part of a criminal investigation would be required to provide the handgun to the

6

officer for the purposes of inspection. A person who fails to provide the handgun would be guilty of a crime of the fourth degree.

The bill also delineates places in which a person would be prohibited from carrying a firearm or destructive device. The limitation on places in which a person would be prohibited from carrying a firearm would not apply to persons permitted to carry a firearm in this State within the authorized scope of an exemption set forth in N.J.S.2C:39-6. The bill also clarifies that it would be a de minimis infraction for which a person would not be prosecuted if the entry onto one of the prohibited locations was a brief, incidental entry onto property. Under the bill, it would be a third degree crime to carry any firearm or a crime of the second degree to possess a destructive device in the following locations:

- a place owned, leased, or under the control of State, county, or municipal government used for the purpose of government administration, including but not limited to police stations;
- a courthouse, courtroom, or any other premises used to conduct judicial or court administrative proceedings or functions;
- a State, county, or municipal correctional or juvenile justice facility, jail and any other place maintained by or for a governmental entity for the detention of criminal suspects or offenders;
- a State-contracted half-way house;
- a location being used as a polling place during the conduct of an election and places used for the storage or tabulation of ballots;
- within 100 feet of a place where a public gathering, demonstration, or event is held for which a government permit is required, during the conduct of such gathering, demonstration, or event;
- a school, college, university, or other educational institution and on any school bus;
- a child care facility, including a day care center;
- a nursery school, pre-school, zoo, or summer camp;
- a park, beach, recreation facility, or area or playground owned or controlled by a State, county or local government unit;
- at youth sports events during and immediately preceding and following the conduct of the event with exception to youth sports events that are firearm shooting competitions;
- a publicly owned or leased library or museum;
- a shelter for the homeless, emergency shelter for the homeless, basic center shelter program, shelter for homeless or runaway youth, children's shelter, child care shelter, shelter for victims of domestic violence, or any shelter licensed by or under the control of the Juvenile Justice Commission or the Department of Children and Families;

7

- a community residence for persons with developmental disabilities, head injuries, or terminal illnesses, or any other residential setting licensed by the Department of Human Services or Department of Health;
- a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises;
- a Class 5 Cannabis retailer or medical cannabis dispensary, including any consumption areas licensed or permitted by the Cannabis Regulatory Commission;
- a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack, or other place where performances, concerts, exhibits, games, or contests are held;
- a casino and related facilities, including but not limited to appurtenant hotels, retail premises, restaurant, and bar facilities, and entertainment and recreational venues located within the casino property;
- a plant or operation that produces, converts, distributes, or stores energy or converts one form of energy to another;
- an airport or public transportation hub;
- a health care facility and any facility licensed or regulated by the Department of Human Services, Department of Children and Families, or Department of Health;
- a public location being used for making motion picture or television images for theatrical, commercial or educational purposes, during the time such location is being used for that purpose;
- private property, including but not limited to residential, commercial, industrial, agricultural, institutional, or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun with a valid and lawfully issued permit to carry; and
- any other place in which the carrying of a firearm is prohibited by statute or rule or regulation promulgated by a federal or State agency.

This bill also allows retired law enforcement officers to renew their permit to carry a handgun every two years.  Under current law, retired law enforcement officers are required to annually renew their permit to carry.  The bill preserves the requirement under current law that retired law enforcement officers semi-annually qualify in the use of the handgun in accordance with the requirements and procedures established by the Attorney General.

The bill also requires the holder of a permit to carry a handgun to adhere to certain requirements while transporting the handgun in a vehicle.

8

Finally, the bill clarifies that application determinations for a permit to carry a handgun that were pending before the Superior Court and filed prior to the bill's enactment are to be made by the court. A Judge of the Superior Court may rely on the approval by the chief police officer or superintendent, as the case may be, as the basis for issuing the permit. Application determinations for a permit to carry a handgun that are submitted on or after the date of the bill's enactment will be made by a chief police officer or superintendent, as the case may be, in accordance with the provisions of the bill.

As reported by the committee, Assembly Bill No. 4769 (ACS) is identical to the Senate Committee Substitute for Senate Bill No. 3214 (SCS), which also was reported by the committee on this date.

FISCAL IMPACT:

The Office of Legislative Services (OLS) anticipates that the State and municipalities will incur indeterminate additional annual operating expenses from the processing of an increased number of applications; establishing training programs; enforcing, prosecuting, and trying the offenses established by the bill; and incarcerating any offenders. In addition, the OLS estimates increased State and municipal revenue because of the fee increases for the permit to carry application, the firearms purchaser identification card (FPIC), the permit to purchase a handgun (PPH), and increased fines and penalties.

The bill's establishment of crimes of the second, third, and fourth degree, and disorderly persons offenses will increase the workload of the Division of Criminal Justice in the Department of Law and Public Safety, county prosecutor's offices, the Administrative Office of the Courts, and municipal courts as additional defendants will be prosecuted and tried for these crimes and offenses. Crimes of the second, third, and fourth degree are adjudicated by the Superior Court. Disorderly persons offenses are adjudicated by municipal courts, in most circumstances. A presumption of non-incarceration applies to first-time offenders of crimes of the third and fourth degree, and disorderly persons offenses. Repeat offenders, however, could be incarcerated, with the Department of Corrections incurring the cost.

The Victims of Crime Compensation Office will receive a portion of the established $200 application fee for the permit to carry a handgun.