DAVID JENSEN PLLC
David D. Jensen (ID No. 032002003)
33 Henry Street
Beacon, New York 12508
Tel: 212.380.6615
david@djensenpllc.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; GIL TAL; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, | : : : : : : : : | Civil No. 22-7464 (RMB/EAP) |
| Plaintiffs, | : : | **AMENDED COMPLAINT** |
| v. | : : : | |
| MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, | : : : : : | |
| Defendants. | : : | |

## LOCAL CIVIL RULE 10.1 STATEMENT

The street and post office address of each named party is:

    Ronald Koons
    300 Barr Ave.
    Linwood, New Jersey 08221

    Nicholas Gaudio
    13 Hillcroft Lane
    Cherry Hill, New Jersey 08034

    Jeffrey M. Muller
    P.O. Box 14
    Branchville, New Jersey 07826

    Gil Tal
    30 Willow Lake Drive
    Colts Neck, New Jersey 07722

Second Amendment Foundation
12500 NE 10th Place
Bellevue, Washington 98005

Firearms Policy Coalition, Inc.
5500 Painted Mirage Road, Suite 320
Las Vegas, Nevada 89149

Coalition of New Jersey Firearm Owners
P.O. Box 768
Sewell, New Jersey 08080

New Jersey Second Amendment Society
P.O. Box 96
Highstown, New Jersey 08520

Matthew Platkin
Office of the Attorney General of New Jersey
25 Market Street
Trenton, New Jersey 08611

Patrick Callahan
New Jersey State Police
P.O. Box 7068
West Trenton, New Jersey 08628

COME NOW Plaintiffs RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; GIL TAL; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, by and through their undersigned attorney, and complain as follows:

1.      This 42 U.S.C. § 1983 action challenges newly enacted New Jersey laws (A4769/S3214, Chapter 131 of the 2022 Laws) that, effective immediately, largely and effectively prohibit private citizens from carrying handguns in public—notwithstanding that they have met the background, training and qualification requirements needed to obtain a permit to carry a handgun in New Jersey. Section 7(a) of these new laws create a lengthy list of "sensitive places," where it is now a crime (felony) of the third degree to carry a handgun, even with a New

Jersey permit to carry a handgun. Furthermore, section 7(b) of the new laws make it a crime of the fourth degree to carry an operable handgun "while in a vehicle."

2.      These new "sensitive place" and vehicle transport restrictions are so far reaching and punitive that they effectively obliterate the ability to bear arms in public for the purpose of protecting one's self and family—which the Supreme Court has ruled to be the "core" of the Second Amendment's protections. As a practical matter, a person with a "permit to carry" now has the ability to "carry" an unloaded handgun inside a case while in their vehicle, and to then load that gun and carry it while they walk on the sidewalk or upon their own property. If this person ventures onto any place that is a "sensitive place"—and that is most public property and all private property without the owner's express consent—they commit a felony crime. Forced to issue permits to carry handguns to qualified adults without regard to their perceived "need" for self-defense, the State has taken the approach, too clever by half, of declaring most of the State to be off limits to carry by private citizens.

## VENUE AND JURISDICTION

3.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343.

4.      The Court has personal jurisdiction over the Defendants because each acted, acts and threatens to act under the color of the laws of the State of New Jersey and each did so, does so and threatens to do so within the geographic confines of the State and District of New Jersey.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2).

## PARTIES

6.      Plaintiff RONALD KOONS is a natural person residing in the City of Linwood in Atlantic County, New Jersey.

7.      Plaintiff NICHOLAS GAUDIO is a natural person residing in the Township of Cherry Hill in Camden County, New Jersey.

8.      Plaintiff JEFFREY M. MULLER is a natural person residing in the Township of Frankford in Sussex County, New Jersey.

9.      Plaintiff GIL TAL is a natural person residing in Township of Colts Neck in Monmouth County, New Jersey.

10.      Plaintiff SECOND AMENDMENT FOUNDATION ("SAF") is a nonprofit corporation organized under the laws of the State of Washington, with its principle office in the City of Bellevue in King County, Washington.

11.      Plaintiff FIREARMS POLICY COALITION, INC. ("FPC") is an exempt (i.e. nonprofit) corporation organized under the laws of the State of Delaware, with its principle office in the City of Las Vegas in Clark County, Nevada.

12.      Plaintiff COALITION OF NEW JERSEY FIREARM OWNERS ("CNJFO") is a not-for-profit corporation organized under New Jersey law with its principle office in the Township of Sewell in Gloucester County, New Jersey.

13.      Plaintiff NEW JERSEY SECOND AMENDMENT SOCIETY ("NJ2AS") is a not-for-profit corporation organized under New Jersey law with its principle office in Mercer County, New Jersey.

14.      Defendant MATTHEW PLATKIN is the Attorney General of New Jersey, and he is named in his official capacity as such. As Attorney General, Defendant is the "chief law enforcement officer of th[e] State" of New Jersey, tasked with the "general supervision of criminal justice." N.J.S.A. § 52:17B-98. Among other things, Defendant is the head of the Department of Law and Public Safety, and as such, he is responsible to "[c]o-ordinate the

inspectional and law enforcement activities of the department." N.J.S.A. § 52:17B-27(a).

Defendant's principle office is in the City of Trenton in Mercer County, New Jersey.

15. Defendant PATRICK CALLAHAN is the Superintendent of the New Jersey State Police, and he is named in his official capacity as such. The Division of State Police is responsible for enforcing the criminal laws of the State of New Jersey, including the statute challenged here. As State Police Superintendent, Defendant is "[t]he executive and administrative head of the Division of State Police." N.J.S.A. § 52:17B-7. Defendant's principle office is in the Township of Ewing in Mercer County, New Jersey. 52:17B-7

## PERTINENT CONSTITUTIONAL PROVISIONS

16. The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

17. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

18. The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

19. The Second Amendment "is fully applicable to the States." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *see also id.* at 805 (Thomas, J., concurring).

20. The "core lawful purpose" of the right to keep and bear arms is "self-defense." *Heller*, 554 U.S. at 571, 630; *accord McDonald*, 561 U.S. at 767-68.

21.     The Supreme Court has explicitly "h[e]ld . . . that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2122 (2022).

22.     More specifically, the issue in *Bruen* was a New York requirement to provide "proper cause" in order to obtain "an unrestricted license" to carry a handgun. *Bruen*, 142 S. Ct. at 2123. Without "proper cause," a person could "receive only a 'restricted' license for public carry, which allows him to carry a firearm for a limited purpose, such as hunting, target shooting, or employment." *Id.* (citations omitted). It was this "restricted" license—which allowed carry only at certain times and places—that the Supreme Court found unconstitutional.

23.     In *Bruen*, the Supreme Court ruled that the Second Amendment "presumptively guarantees . . . a right to 'bear' arms in public for self-defense." *Bruen*, 142 S. Ct. at 2135. As such, restrictions on the right to bear arms in public are presumptively unconstitutional, unless "the government [can] demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

24.     While restrictions on carrying firearms in "sensitive places" such as "legislative assemblies, polling places, and courthouses" may be justifiable by reference to historical tradition, the Supreme Court has expressly cautioned against reading this "sensitive places" exception "too broadly." *See Bruen*, 142 S. Ct. at 2134. The "sensitive places" exception does not authorize restrictions that "would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense." *Id.* at 2134.

**PERTINENT STATUTES AND REGULATIONS**

Background and Overview

25.     In New Jersey, it is illegal to carry a handgun for the purpose of self-defense "without first having obtained a permit to carry[.]" N.J.S.A. § 2C:39-5(b)(1). A person who does

so commits a crime (i.e. felony) of the second degree, for which the presumptive sentence of imprisonment is seven years. *See id.*; *see also id.* at § 2C:44-1(f)(1)(c). New Jersey law allows some people to carry handguns without obtaining permit to carry, including various law enforcement officers and personnel in prosecutors' office, members of the military acting in the course of duties, and qualified retired law enforcement officers. *See id.* § 2C:39-6(a), (b), (c), (*l*) (the "Exempt Persons").

26.     For many years, New Jersey law has required people to meet a number of requirements in order to obtain permits to carry handguns. Anyone who has a permit at the time of this Complaint has already passed a background investigation and met a number of requirements related to their age, criminal background and mental health, and have also demonstrated that they are "thoroughly familiar with the safe handling and use of handguns." N.J.S.A. § 2C:58-4(c) (2022); 2022 N.J. Laws c. 131, § 3; *see also* N.J.S.A. § 2C:58-3(c). New Jersey State Police regulations required them to obtain training, in both the use of firearms and in use of force laws, and to pass the same basic qualification requirements that apply to Exempt Persons. *See* N.J.A.C. § 13:54-2.4(b); *see also* N.J.S.A. § 2C:39-6(j); 2022 N.J. Laws c. 131, § 3 (new subpart (g) directing State Police to adopt training and qualification requirements).

27.     Until recently, New Jersey law required individuals seeking permits to carry handguns to show that they had "a justifiable need to carry a handgun," defined as "the urgent necessity for self-protection, as evidenced by specific threats or previous attacks which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun." *See* N.J.S.A. § 2C:58-4(c) (2022). Following *Bruen*, the New Jersey Attorney General issued a directive against enforcement of the "justifiable need" requirement. *See* N.J. Attorney General Law Enforcement Directive No. 2022-07, *available at*

https://www.nj.gov/oag/dcj/agguide/directives/ag-Directive-2022-07_Directive-Clarifying-Requirements-For-Carrying-Of-Firearms-In-Public.pdf.

Enactment of A4769/S3214

28.     On December 22, 2022, New Jersey Governor Phil Murphy approved new legislation (A4769/S3214) that amends various aspects of New Jersey's gun laws, including the requirements for obtaining a permit and the places in which a person with a permit can carry a handgun. *See* 2022 N.J. Laws c. 131, §§ 3, 7. As justification, the legislation states that "with the precedent established in *Bruen*, laws requiring showings of particularized need are no longer legally viable to determine whether a person may carry a handgun in public." *Id.* § 1(b). The previous "justifiable need" standard had, according to the legislature, "minimized the serious dangers of misuse and accidental use inherent in the carrying of handguns in a public place," and the new "sensitive place" restrictions were now necessary because "a much greater number of individuals will now qualify to carry handguns in public." *Id.* § 1(c). Otherwise stated, the legislature's objective was to continue minimizing the carry of handguns as much as possible.

29.     Section 7(a) of the new legislation defines a "sensitive place" as any place that falls within one of 25 enumerated categories, as follows:

7.     Places where the carrying of a firearm or destructive device is prohibited.

a. Except as otherwise provided in this section and in the case of a brief, incidental entry onto property, which shall be deemed a de minimis infraction within the contemplation of N.J.S.2C:2-11, it shall be a crime of the third degree for any person, other than a person lawfully carrying a firearm within the authorized scope of an exemption set forth in N.J.S.2C:39-6, to knowingly carry a firearm as defined in subsection f. of N.J.S.2C:39-1 . . . in any of the following places, including in or upon any part of the buildings, grounds, or parking area of:

(1) a place owned, leased, or under the control of State, county or municipal government used for the purpose of government administration, including but not limited to police stations;

(2) a courthouse, courtroom, or any other premises used to conduct judicial or court administrative proceedings or functions;

(3) a State, county, or municipal correctional or juvenile justice facility, jail and any other place maintained by or for a governmental entity for the detention of criminal suspects or offenders;

(4) a State-contracted half-way house;

(5) a location being used as a polling place during the conduct of an election and places used for the storage or tabulation of ballots;

(6) within 100 feet of a place where a public gathering, demonstration or event is held for which a government permit is required, during the conduct of such gathering, demonstration or event;

(7) a school, college, university or other educational institution, and on any school bus;

(8) a child care facility, including a day care center;

(9) a nursery school, pre-school, zoo, or summer camp;

(10) a park, beach, recreation facility or area or playground owned or controlled by a State, county or local government unit, or any part of such a place, which is designated as a gun free zone by the governing authority based on considerations of public safety;

(11) youth sports events, as defined in N.J.S.5:17-1, during and immediately preceding and following the conduct of the event, except that this provision shall not apply to participants of a youth sports event which is a firearm shooting competition to which paragraph (3) of subsection b. of section 14 of P.L.1979, c.179 (C.2C:58-6.1) applies;

(12) a publicly owned or leased library or museum;

(13) a shelter for the homeless, emergency shelter for the homeless, basic center shelter program, shelter for homeless or runaway youth, children's shelter, child care shelter, shelter for victims of domestic violence, or any shelter licensed by or under the control of the Juvenile Justice Commission or the Department of Children and Families;

(14) a community residence for persons with developmental disabilities, head injuries, or terminal illnesses, or any other residential setting licensed by the Department of Human Services or Department of Health;

(15) a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises;

(16) a Class 5 Cannabis retailer or medical cannabis dispensary, including any consumption areas licensed or permitted by the Cannabis Regulatory Commission established pursuant to section 31 of P.L.2019, c.153 (C.24:6I-24);

(17) a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack or other place where performances, concerts, exhibits, games or contests are held;

(18) a casino and related facilities, including but not limited to appurtenant hotels, retail premises, restaurant and bar facilities, and entertainment and recreational venues located within the casino property;

(19) a plant or operation that produces, converts, distributes or stores energy or converts one form of energy to another;

(20) an airport or public transportation hub;

(21) a health care facility, including but not limited to a general hospital, special hospital, psychiatric hospital, public health center, diagnostic center, treatment center, rehabilitation center, extended care facility, skilled nursing home, nursing home, intermediate care facility, tuberculosis hospital, chronic disease hospital, maternity hospital, outpatient clinic, dispensary, assisted living center, home health care agency, residential treatment facility, residential health care facility, medical office, or ambulatory care facility;

(22) a facility licensed or regulated by the Department of Human Services, Department of Children and Families, or Department of Health, other than a health care facility, that provides addiction or mental health treatment or support services;

(23) a public location being used for making motion picture or television images for theatrical, commercial or educational purposes, during the time such location is being used for that purpose;

(24) private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun with a valid and lawfully issued permit under N.J.S.2C:58-4, provided that nothing in this paragraph shall be construed to affect the authority to keep or carry a firearm established under subsection e. of N.J.S.2C:39-6; and

(25) any other place in which the carrying of a firearm is prohibited by statute or rule or regulation promulgated by a federal or State agency.

30.     A person who carries a handgun in one of these new "sensitive places" commits a

crime (i.e. felony) of the third degree, for which the maximum sentence is five years'

imprisonment, and the presumptive sentence is imprisonment for four years. *See* 2022 N.J. Laws

c. 131, § 7(a); N.J.S.A. §§ 2C:43-6(a)(3), 2C:44-1(f)(1)(d). The "sensitive places" restriction

does not apply to the Exempt Persons (e.g. law enforcement officers, members of the military

and certain personnel in prosecutors' offices. *See* 2022 N.J. Laws c. 131, § 7(a). The "sensitive

places" restriction also does not apply to armored car guards and private security guards with

written authorization. *See id.* § 7(e)-(f).

31.     The "sensitive places" law provides an exception for locked up guns in parking

lots. *See id.* § 7(c). A person with a permit can drive into a parking lot of a "sensitive place" with

an unloaded handgun inside a case, and they can then store the handgun "within a locked lock

box and out of plain view within the vehicle." *See id.* § 7(c)(1)-(2). Alternatively, they can

"immediately leave[]" the parking lot with the handgun provided, they do not "enter[ing] into or

on the grounds of the prohibited place with the handgun." *See id.* § 7(c)(4). Finally, a person can

"transport a concealed handgun in the immediate area surrounding their vehicle . . . only for the

limited of storing or retrieving the handgun" within these parameters. *See id.* § 7(c)(3).

32.     The "sensitive places" law also provides that a person with a permit does not

violate the "sensitive places" law while "traveling along a public right-of-way that touches or

crosses" a "sensitive place." *See id.* § 7(d).

33.     In addition, Section 7(b) now prohibits people with permits to carry from carrying

handguns while they are "in a vehicle in New Jersey," instead requiring them to unload their

guns and place them in a locked container or a trunk:

>     b. (1) A person, other than a person lawfully carrying a firearm within the authorized
> scope of an exemption set forth in subsection a., c., or l. of N.J.S.2C:39-6, who is
> otherwise authorized under the law to carry or transport a firearm shall not do so while in
> a vehicle in New Jersey, unless the handgun is unloaded and contained in a closed and
> securely fastened case, gunbox, or locked unloaded in the trunk of the vehicle. . . .

34.     A person who carries an operable handgun in a vehicle in violation of this section

commits a crime (i.e. felony) of the fourth degree, for which the maximum sentence is 18

months' imprisonment and the presumptive sentence is nine months. *See* 2022 N.J. Laws c. 131, § 7(b); N.J.S.A. §§ 2C:43-6(a)(4), 2C:44-1(f)(1)(e). Again, this prohibition does not apply to Exempt Persons, nor to armored car guards or private security guards. *See* 2022 N.J. Laws c. 131, § 7(b), (e)-(f).

35. Prior to A4769/S3214, New Jersey law prohibited individuals with permits to carry from carrying handguns in relatively few locations. The only statutory prohibition pertained to schools and other educational facilities, where it was a third degree crime to "possess[] any weapon . . . without the written authorization of the governing officer . . . , irrespective of whether he possesses a valid permit to carry the firearm or a valid firearms purchaser identification card." *See* N.J.S.A. § 2C:39-5(e)(1).

36. Furthermore, New Jersey law has long required all people to transport guns "unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which it is being transported"—but provided exceptions for Exempt Persons and, until A4769/S3214, for those with permits to carry handguns. *See* N.J.S.A. § 2C:39-5(g). Now, in the context of the everyday activity of using a car, train or other "vehicle," a New Jersey "permit to carry" provides basically no benefit.

<u>The "Sensitive Place" and Vehicle Restrictions Challenged Here</u>

37. Plaintiffs challenge the restrictions contained in subparts 10, 12, 15, 17, 20, 21 and 24 of section 7(a), as well as section 7(b)(1)'s prohibition on carrying handguns while in vehicles. Plaintiffs' challenge to subpart 10 does not include the restriction on carrying in "playgrounds," and Plaintiffs' challenge to subpart 20 does not concern any secured area in an airport (i.e. an area subject to security screening). In confining the present challenge to these particular provisions, Plaintiffs do not intend to signal that the remaining restrictions are constitutional or otherwise permissible. Rather, Plaintiffs consider the "sensitive place"

-12-

designations they have identified to be plainly unconstitutional, while also causing some of the greatest infringements of the right to bear arms.

38.     The specific "sensitive places" that Plaintiffs challenge are:

(10) a park, beach, recreation facility or area or playground owned or controlled by a State, county or local government unit, or any part of such a place, which is designated as a gun free zone by the governing authority based on considerations of public safety;

(12) a publicly owned or leased library or museum; . . .

(15) a bar or restaurant where alcohol is served, and any other site or facility where alcohol is sold for consumption on the premises; . . .

(17) a privately or publicly owned and operated entertainment facility within this State, including but not limited to a theater, stadium, museum, arena, racetrack or other place where performances, concerts, exhibits, games or contests are held; . . .

(20) an airport or public transportation hub;

(21) a health care facility, including but not limited to a general hospital, special hospital, psychiatric hospital, public health center, diagnostic center, treatment center, rehabilitation center, extended care facility, skilled nursing home, nursing home, intermediate care facility, tuberculosis hospital, chronic disease hospital, maternity hospital, outpatient clinic, dispensary, assisted living center, home health care agency, residential treatment facility, residential health care facility, medical office, or ambulatory care facility; . . . [and]

(24) private property, including but not limited to residential, commercial, industrial, agricultural, institutional or undeveloped property, unless the owner has provided express consent or has posted a sign indicating that it is permissible to carry on the premises a concealed handgun with a valid and lawfully issued permit under N.J.S.2C:58-4, provided that nothing in this paragraph shall be construed to affect the authority to keep or carry a firearm established under subsection e. of N.J.S.2C:39-6[.]

39.     The prohibition on carrying functional handguns in vehicles provides:

b. (1) A person, other than a person lawfully carrying a firearm within the authorized scope of an exemption set forth in subsection a., c., or l. of N.J.S.2C:39-6, who is otherwise authorized under the law to carry or transport a firearm shall not do so while in a vehicle in New Jersey, unless the handgun is unloaded and contained in a closed and securely fastened case, gunbox, or locked unloaded in the trunk of the vehicle. . . .

### DEFENDANTS' ACTUAL AND THREATENED ENFORCEMENT OF THE CHALLENGED LAWS AND ITS INJURY TO THE PLAINTIFFS

Plaintiff Ronald Koons

40.     Plaintiff Ronald Koons is 61 year old married man who served in the Navy and worked for many years at the Federal Aviation Administration. Plaintiff Koons and his wife raised five children and currently have eight grandchildren.

41.     Several years ago, after retiring from the FAA, Plaintiff Koons became a pastor at a local church. After concerns developed about the possibility of a criminal or terrorist attack at the church, Plaintiff Koons began carrying a concealed handgun during various church activities.

42.     After the Supreme Court decided *Bruen*, Plaintiff Koons applied for and obtained a permit to carry pursuant to N.J.S.A. § 2C:58-4. Plaintiff Koons obtained his permit on October 6, 2022, and he then began carrying a handgun on essentially a daily basis.

43.     Among other places, Plaintiff Koons often carried a handgun when he was shopping at grocery stores and other retail outlets, stopping for gas, visiting with people, attending to business around the church and eating in restaurants. Plaintiff Koons visited with people in their homes, as well as in places such as the hospital in Atlantic City, and when he did so he often carried his handgun with him. On days that Plaintiff Koons carried a handgun, he generally carried it with him throughout the day, unless he was going to a place that prohibited guns, such as a school. Plaintiff Koons carried his gun while he traveled in car.

44.     Now that Section 7 of A4769/S4132 has become effective, Plaintiff Koons largely refrains from carrying a gun outside his home. He intends to continue carrying a handgun while at the church, but he will transport the gun there unloaded and enclosed in a case, as he did before he had a permit to carry. Otherwise, there is almost no place, other than on the sidewalk or the property around his home, where he can now carry a gun lawfully, and the consequences

-14-

of violating the "sensitive place" or vehicle restrictions are overwhelming. As such, Plaintiff Koons no longer carries a handgun outside his home. Among other things, he does not carry handguns to the public places he carried them previously.

45.     However, if the provisions challenged in this lawsuit were no longer in effect, then Plaintiff Koons would be much more likely to again carry a handgun while in public.

Plaintiff Nicholas Gaudio

46.     Plaintiff Nicholas Gaudio is 42 year old widowed man who is a single parent of two children. Plaintiff Gaudio is an engineer, and he has a Top Secret security clearance.

47.     Plaintiff Gaudio became interested in obtaining a permit to carry in 2010, after he had recently returned to New Jersey after living in Virginia. After learning that the denial of his application was all but certain, he chose not to pursue it. However, after the Supreme Court decided *Bruen*, Plaintiff Gaudio applied for and obtained a permit to carry pursuant to N.J.S.A. § 2C:58-4. Plaintiff Gaudio obtained his permit on October 12, 2022, and he then began carrying a handgun throughout his everyday life in Cherry Hill.

48.     Among other places, Plaintiff Gaudio often carried a handgun when he was shopping at grocery stores and other retail outlets, stopping for gas, visiting with people, and otherwise attending to business. Plaintiff Gaudio carried a handgun while eating in restaurants, including restaurants that serve alcohol, and while visiting the library and attending the theater. Plaintiff Gaudio carried his handgun in parks and playgrounds throughout his neighborhood. Plaintiff Gaudio carried his handgun when he went to the doctor, as well as when he took his daughter to the hospital emergency room. On days that Plaintiff Gaudio carried a handgun, he generally carried it with him throughout the day, unless he was going to a place that prohibited guns, such as a school. Plaintiff Gaudio carried his gun while he traveled in car.

-15-

49.     Now that Section 7 of A4769/S4132 has become effective, Plaintiff Gaudio largely refrains from carrying a gun outside his home. While he would like to continue carrying his gun to the extent he can do so, there is almost no place away from his own property where he can do so, other than the street and the sidewalk. The consequences of violating the "sensitive place" or vehicle restrictions are overwhelming, particularly given that Plaintiff Gaudio has a security clearance and a family to provide for. As such, Plaintiff Gaudio no longer carries a handgun outside his home. Among other things, he does not carry handguns to the public places he carried them previously.

50.     However, if the provisions challenged in this lawsuit were no longer in effect, then Plaintiff Gaudio would be much more likely to again carry a handgun while in public.

<u>Plaintiff Jeffrey M. Muller</u>

51.     Plaintiff Jeffrey M. Muller is a 72 year old married man who obtained a permit to carry a handgun pursuant to N.J.S.A. § 2C:58-4 in June 2011. Plaintiff Muller has requalified for and renewed his permit every two years since then.

52.     Plaintiff Muller is one of the very few New Jersey citizens who was able to obtain a permit to a permit prior to *Bruen*. In January 2010, an out-of-state gang kidnapped Plaintiff Muller and took him to Missouri, where he was able to escape and summons help. Plaintiff Muller was thereafter a key witness in the kidnappers' prosecution. Notwithstanding this, Plaintiff Muller obtained a permit only after litigating a judge's denial of his application, which the New Jersey State Police had approved. One of Plaintiff Muller's attackers remains in prison in New Jersey, and another was released last month (in November 2022).

53.     After Plaintiff Muller obtained his permit to carry in June 2011, and he began carrying a handgun most of the time. The prosecution against Plaintiff Muller's attackers was

ongoing, and he was particularly concerned about protecting himself. In recent years, as time has

passed, Plaintiff Muller has carried a gun less than he did during the years following June 2011,

but until just now he has continued to carry a handgun on a regular basis.

54.     Among other places, Plaintiff Muller has often carried a handgun while shopping

at stores such as ShopRite, Lowe's and Tractor Supply Company, stopping at gas stations,

getting food at delis and restaurants, including restaurants that serve alcohol. Plaintiff Muller has

carried a handgun while attending appointments with his physician and dentist. Plaintiff Muller

has carried a handgun while walking in parks and while taking his grandchildren to playgrounds.

Plaintiff Muller has also carried a handgun while visiting libraries, as well as while attending

music shows at public entertainment venues. Finally, Plaintiff Muller has carried a handgun

while attending trade shows at casino facilities (i.e. in a conference room, not on the casino

floor). While he does not recall carrying a handgun while using public transit, or while visiting a

museum or a theater, Plaintiff Muller would want to be able to carry a handgun in any of these

places were he to be present there. As a general premise, when Plaintiff Muller carries a

handgun, he normally carries it with him throughout the day, unless he is going to a place that

prohibits guns, such as a school. Up until now, Plaintiff Mulller has normally carried his

handgun in a holster on his person while traveling in car.

55.     Now that Section 7 of A4769/S4132 has become effective, Plaintiff Muller

largely refrains from carrying a gun outside his home. While he would like to continue carrying

his gun to the extent he can do so, there is almost no place away from his own property where he

can do so, other than the street and the sidewalk, and the consequences of violating the "sensitive

place" or vehicle restrictions are overwhelming. As such, Plaintiff Muller does not carry

handguns to the public places he carried them previously.

56.     However, if the provisions challenged in this lawsuit were no longer in effect, then Plaintiff Muller would be much more likely to again carry a handgun while in public.

Plaintiff Gil Tal

57.     Plaintiff Gil Tal is a 45 year old married man who lives in Colts Neck, New Jersey and has two children. Plaintiff Tal is the part owner of a facility that provides men's health services in Parsippany, New Jersey. Plaintiff Tal is also a licensed pilot, and he owns a small plane that he normally stores in Englishtown, New Jersey.

58.     While Plaintiff Tal now lives in Monmouth County, for many years he lived in Staten Island, New York and commuted to the clinic's location. In 2010, Plaintiff Tal obtained an unrestricted "Business Carry" handgun license from the New York City Police Department, which allowed him to carry a handgun throughout the City and State of New York. Plaintiff Tal then began to carry a handgun as part of his daily routine. Among other things, he carried a handgun while getting food at delis and restaurants (including restaurants that serve alcohol), shopping at stores, attending medical appointments, going to parks, visiting libraries and attending public venues. Furthermore, Plaintiff Tal used public transportation frequently, and often carried a handgun when he doing so. However, Plaintiff Tal did not carry a handgun at the clinic, as he did not have the ability to lawfully carry a handgun in New Jersey.

59.     On December 16, 2022, authorities in Monmouth County, New Jersey issued Plaintiff Tal a permit to carry a handgun pursuant to N.J.S.A. § 2C:58-4. However, by the time Plaintiff Tal picked up the permit from the police department, Chapter 131 had become law, and like the other Plaintiffs, Plaintiff Tal accordingly refrained from carrying a gun outside his home.

60.     But for the "sensitive place" and vehicle carry restrictions in Chapter 131, Plaintiff Tal would resume carrying a handgun as part of his daily routine, largely similar to

when he lived in New York. Among other things, Plaintiff Tal would carry a handgun while shopping at stores, stopping at gas stations, using public transportation (including public transportation hubs), getting food at restaurants and delis, attending medical appointments, visiting parks and associated facilities, attending events at theaters and stadiums, visiting museums and libraries, and otherwise undertaking his day-to-day business. Furthermore, Plaintiff Tal would also carry a handgun while he was at the clinic. Finally, Plaintiff Tal would carry a handgun at airports in New Jersey where he operates his plane, including the Old Bridge Airport that he normally uses.

61.     If the provisions challenged in this lawsuit were no longer in effect, then Plaintiff Tal would be much more likely to again carry a handgun while in public.

<u>Plaintiff Second Amendment Foundation</u>

62.     Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutionally protected right to possess firearms and firearm ammunition, and the consequences of gun control. SAF has over 700,000 members and supporters nationwide, including thousands of members in New Jersey.

63.     SAF brings this action on behalf of those members, including the named Plaintiffs herein. SAF's members are adversely and directly harmed by Defendants' enforcement of the laws challenged herein harms other members of SAF in the same basic manner that it harms the individual Plaintiffs in this action.

Plaintiff Firearms Policy Coalition

64.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a non-profit organization incorporated under the laws of Delaware with a place of business in Clark County, Nevada. The purposes of FPC include defending and promoting Second Amendment rights, advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

65.     FPC has members in the State of New Jersey. FPC's members include individuals who are not prohibited under state or federal law from possessing, receiving, owning, or purchasing a firearm or ammunition. FPC's members are adversely and directly harmed by Defendants' enforcement and threatened enforcement of the laws challenged here in the same basic manner as the individual Plaintiffs here. The interests that FPC seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, FPC sues on behalf of its members, including the individual Plaintiffs herein. Plaintiff FPC has members who have been denied their right to carry by operation of Defendants' enforcement and threatened enforcement of the laws challenged herein. But for Defendants' enforcement of the laws challenged herein, FPC's non-prohibited members in New Jersey would carry a firearm outside the home for self-defense.

Plaintiff Coalition of New Jersey Firearm Owners

66.     Plaintiff Coalition of New Jersey Firearm Owners ("CNJFO") is a not-for-profit corporation organized under New Jersey law with its principle office in the Township of Sewell in Gloucester County, New Jersey. CNJFO's mission is to support the Second Amendment through education and awareness, particularly within the State of New Jersey. CNJFO advocates

for lawful, safe, and responsible firearms ownership in New Jersey, including by regularly reporting on the State's firearms laws.

67.     CNJFO has many members who reside in New Jersey, who hold permits to carry handguns, and who the challenged "sensitive place" and vehicle transport restrictions harm in the same basic manner as the individual Plaintiffs in this case. CNJFO participates in this action as a Plaintiff on behalf of its members.

Plaintiff New Jersey Second Amendment Society

68.     Plaintiff New Jersey Second Amendment Society ("NJ2AS") is a civil rights advocacy group dedicated to protection of the Second Amendment. NJ2AS has members across New Jersey who desire protect themselves and their constitutional rights.

69.     Many of these members have obtained permits to carry handguns, and the challenged "sensitive place" and vehicle transport restrictions harm these members in the same basic manner as they harm the individual Plaintiffs in this case. NJ2AS brings these claims on behalf of its members.

**CAUSE OF ACTION FOR DEPRIVATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983**

70.     Each and every Defendant, in their various capacities as County Prosecutors, the Attorney General and the State Police Superintendent, have the statutory duty to enforce the criminal laws of New Jersey, including the restrictions set forth in Section 7 of Chapter 131 of the 2022 New Jersey Laws, as alleged above, and they do indeed enforce and threaten to enforce these laws by virtue of their authority under the laws of New Jersey. As such, each and every Defendant acts under color of law within the meaning of 42 U.S.C. § 1983.

71.     Each and every Defendant stands ready, willing and able to enforce, and in fact actually does enforce, and actively threatens to enforce, Section 7 of A4769/S3214, including the

"sensitive place" and vehicle restrictions challenged here. Each and every Defendant presents an imminent threat of enforcement to the individual Plaintiffs and to various members of the organizational Plaintiffs. As such, each and every Defendant acts to cause the deprivations that Plaintiffs complain of.

72.     The challenged restrictions—subparts 10, 12, 15, 17, 20, 21 and 24 of section 7(a), as well as section 7(b)(1)'s prohibition on carrying handguns in vehicles—violate the right to bear arms. Prohibitions on carrying handguns in public are presumptively unconstitutional, and there is no established historical tradition that could justify the restrictions challenged here. In threatening to enforce the challenged restrictions and thereby causing the Plaintiffs to refrain from carrying guns as alleged above, Defendants thus act to deprive Plaintiffs of their rights, privilege or immunities, and more specifically, their Second Amendment right to bear arms, in violation of 42 U.S.C. § 1983.

73.     Plaintiffs are accordingly entitled to declaratory and injunctive relief, as well as attorney's fees and costs.

### PRAYER

WHEREFORE, Plaintiffs pray for the following relief:

    i.       a declaratory judgment that subparts 10, 12, 15, 17, 20, 21 and 24 of section 7(a) and subpart 1 of section 7(b) of A4769/S3214 violates the right to bear arms secured by the Second and Fourteenth Amendments;

    ii.      a preliminary and/or permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing subparts 10, 12, 15, 17, 20, 21 and 24 of section 7(a) and subpart 1 of section 7(b) of A4769/S3214;

    iii.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

    iv.       attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Dated: February 7, 2023

> s/ David D. Jensen
> David D. Jensen
> DAVID JENSEN PLLC
> 33 Henry Street
> Beacon, New York 12508
> Tel: 212.380.6615
> david@djensenpllc.com