UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br> *Plaintiffs,* <br> v. <br> WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C. | No. 22-CV-7463 (RMB) (AMD) |

1

MACAULAY in her official capacity as the Prosecutor of Camden County, New Jersey; ANNEMARIE TAGGART in her official capacity as the Prosecutor of Sussex County, New Jersey; MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,
*Defendants.*

## CERTIFICATION OF BONNY FRASER

Bonny Fraser, of full age, upon her oath certifies and says:

1. I am the Deputy Commissioner of Policy, Legal Affairs and Compliance for the New Jersey Department of Children and Families (DCF or Department), which is the state's first Cabinet-level agency devoted exclusively to serving and supporting at-risk children and families. It is made up of about 6,600 staff who are focused on and committed to assisting and empowering residents to be safe, healthy and connected. The DCF works to, inter alia, prevent child maltreatment and promote strong families; provide an integrated and inclusive system of care for youth; and safeguard staff.

2. Prior to joining DCF, I worked with the New Jersey Department of Human Services as Assistant Commissioner for Legal and Regulatory Affairs. In that role, I was responsible for directing a wide range of legal support services for that agency, oversaw the department's compliance and risk management =

activities, managed tort and employment litigation, oversaw the Office of contract Policy and Management and served as a member of the Senior Management Team.

3. As Deputy Commissioner, I oversee the Offices of Childcare Licensing, Youth Residential Licensing, Institutional Abuse Investigation, Education, Legal Affairs, Litigation, Employee Relations and Equal Employment Opportunity & Affirmative Action. In addition, I provide legal and compliance support for the entire agency, including the Divisions of the Children's System of Care, Child Protection and Permanency, Family and Community Partnership, and Women, and various units and offices including the Offices of Resilience, Family Voice, and Diversity Equity and Belonging.

4. My work with DCF frequently brings me into contact with federal regulators and state policymakers and leaders on addiction and behavioral health, as well as general social work issues.

5. As Deputy Commissioner of DCF, I have personal knowledge of the material facts of this Certification.

6. Children and families involved with DCF frequently require services related to physical health, mental health or substance abuse. DCF oversees health screenings at its offices to determine whether further care or

services are required for a child in DCF care. Local offices have consultants on site who perform these functions.

7. DCF has the authority to remove children from their parents or other caregivers due to abuse—including but not limited to physical or sexual abuse—or neglect by way of it's Division of child Protection and Permanency (DCP&P). Indeed, in 2022 86% of children in DCF care have been involved in a violent incident at least once, and 86% have a parent struggling with mental health or substance abuse.

8. When DCP&P becomes involved with a family due to child welfare concerns, and particularly when intervention results in the removal of a child from a family, relationships with parents or other caregivers are strained as these are instances that are extremely personal and emotional to those involved. DCF gets involved with crises situations due to substance abuse, mental health issues and so forth, whereby its involvement often increases the stressors on the families/individuals involved because of the focus on children.

9. In order to provide a safe and secure environment wherein parents may visit children in DCF care, parental visitations frequently occur in one of 46 DCF offices, supervised by DCP&P or contracted staff.

10. Department staff routinely are threatened with violence. In 2022, DCF Security and Safety Operations tracked seventy-three (73) instances where

DCF employees were threatened with violence by clients or the public, and there were seven (7) assaults on employees in the same year. That is an increase in incidents from 2020 and 2021.

11. Partly due to routine threats against DCF staff, firearms currently are prohibited at all DCF offices, except for uniformed officers and security. Signage is posted in each DCF office stating: For your safety and ours, the following items are prohibited when being transported by DCF staff or visiting a DCF/DCP&P office...." That list includes firearms. Additionally, guests entering DCF offices, including parents visiting their children in DCF care, must pass through security to enter the office. Each visitor or client enters each DCF office through a designated entrance where security is stationed. They are required to sign in with a form of photo identification and logged into a visitor management system prior to entry. They are then accompanied by staff and security through a secure door to the main body of the office. They are directed where to go and are monitored by caseworkers and security to ensure everyone's safety.

12. If unrestricted concealed carry were permitted in DCF offices, it would create an atmosphere of heightened stress and fear for staff, as well as children in care, resource parents, as well as other parents and caregivers and professionals visiting DCF locations. Staff already contend with difficult

situations and safety risks by the nature of their involvement in child welfare cases where parental - and even childhood - mental health and substance abuse are common issues. Allowing concealed weapons would further endanger staff and visitors to DCF facilities. As noted above, in DCP&P cases relationships between the caregivers, children and agency staff can be strained due to the nature of the agency's role, and DCF staff are already frequently threatened.

13. It is imperative for the security of DCF staff, the children in DCF care, and all family members involved, that DCF facilities and offices remain secure and free of firearms except those possessed by security personnel.

14. DCF additionally operates 16 regional schools and two hospital-based satellite programs, including: programs for at-risk youth, and programs for pregnant and parenting teens with licensed day care centers for the infants/toddlers of the parenting teens.

15. These State and federally compliant education programs are designed for students who exhibit severe cognitive, physical, behavioral and emotional disabilities; exhibit a variety of moderate to severe learning disabilities; are at risk of school failure; and/or are pregnant/parenting teens.

16. Regular and special education programs are individually designed and provided to these students in the least restrictive environment.

17. Pursuant to statute, N.J.S.A. 2C:39-5(e), concealed weapons are currently prohibited at DCF school facilities.

18. As with other DCF offices and for the same reasons described above, it is imperative for the security of DCF staff, the children in DCF care, and all family members involved, that DCF schools and programs remain secure and free of firearms except those possessed by security personnel.

19. DCF also licenses more than 4000 child care centers across the state. Like school locations, these are particularly sensitive sites. More so even than schools, however, these programs restrict the presence of potentially dangerous conditions due to the particularly young ages of the children in care, which typically extend from infancy through grade school. Children this young are ill prepared for any of the precautionary measures necessary to guard against gun usage in a center (e.g. children who are too young to be independently mobile cannot practice evacuation drills), and most centers are too small to provide armed security personnel of their own.

20. Through contracted providers, DCF's Children's System of Care licenses and provides funding for youth residential facilities that serve youth experiencing mental, emotional and behavioral health needs as well as those requiring substance use disorder treatment whose treatment needs require them to be placed outside of the home.

21. Additionally, DCF schools, licensed child care centers and contracted residential facilities, are sensitive places wherein the presence of firearms would compromise the safety and security of teachers, staff, and vulnerable students and clients.

The foregoing statements are true to the best of my knowledge, information, and belief. I am aware that, if any of the statements are willfully false, I may be subject to punishment.

BONNY FRASER
Deputy Commissioner
New Jersey Department of Children and Families

Dated: 2/13/2023

8