UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | Hon. Renée Marie Bumb, U.S.D.J. <br> Hon. Ann Marie Donio, U.S.M.J. <br><br> Docket No. 22-CV-7463 <br><br> **CIVIL ACTIONS** <br> **(ELECTRONICALLY FILED)** |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; GIL TAL; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | Hon. Reéne Marie Bumb, U.S.D.J. <br> Hon. Ann Marie Donio, U.S.M.J. <br><br> Docket No. 22-CV-7464 |

1

## DECLARATION OF PETER KOCHENBURGER

1. I have been asked to briefly describe the existing liability insurance available to New Jersey residents who own handguns. As I discuss in this declaration, most, existing homeowners, renters, and personal auto insurance policies already provide liability coverage to their policyholders for claims related to firearm deaths or injuries that are accidently caused.  In addition, while it is currently a small market, several insurers offer separate insurance policies that specifically cover certain firearm-related claims.  All these policies are subject to various requirements, conditions, and exclusions that are found in most insurance policies.

*Background*

2. I am a visiting professor of law at Southern University Law Center, a public HBCU law school in Louisiana, and just appointed the Managing Fellow of the Law Center's new Insurance Law and Policy Institute. From 2004 – June 2022 I was the Executive Director of the Insurance Law Center and Associate Clinical Professor of Law at the University of Connecticut School of Law.  The Insurance Law Center offers the only LLM in Insurance Law in the country and I remain affiliated with the Center.

3. I currently serve on the Treasury Department's Federal Advisory Committee on Insurance, the Federal Reserve's Insurance Policy Advisory Committee, the New York Department of Financial Services Consumer Protection Advisory Board, and have been an appointed consumer representative at the National Association of Insurance Commissioners since 2010.[1] I was elected to the American Law Institute in 2013 and serve on several editorial boards for insurance law-related periodicals. I attach my CV to this certification, which includes a list of publications and presentations (Exhibit A).

4. I have been researching and writing on the relationships between insurance and firearms since 2013, starting with a 2014 law review article on how insurance could address gun violence, and most recently an article for Law360 that discussed the City of San Jose's 2022 ordinance requiring gun-owners to have liability insurance.[2] I have made numerous

---

[1] I am writing in my private capacity and my opinions should not be attributed to Southern University Law Center, Southern University, the University of Connecticut, nor any regulatory bodies or previous employers or clients.

[2] *Liability Insurance and Gun Violence,* 46 Conn. L. Rev. 1265; *The Insurance Industry's Growing Potential Role in Gun Safety,* Law360 (published May 14, 2022).

presentations in this area in academic settings, at bar conferences, insurance professional organizations, and actuarial organizations in the U.S. and England.

5. I am being compensated for my time on this case on an hourly basis at the rate of $250/hr. My compensation is not contingent on the results of my analysis or the substance of any opinion offered.

6. My opinions are based on my review of the relevant statute, my education, expertise, and research in the field of liability insurance coverage, and my review and analysis of potentially relevant insurance policies.

### *2022 N.J. Sess. Law 131 (Assembly Bill 4769)*

7. This legislation was signed into law in December 2022 and modifies various New Jersey statutes related to purchasing and carrying handguns. My certification centers on Section 4, which is a new provision and requires liability insurance as a condition of carrying a handgun in public. Section 4.a. states:

> Every private citizen who carries a handgun in public in this State shall maintain liability insurance coverage insuring against loss resulting from liability imposed by law for bodily injury, death, and property damage sustained by any person arising out of the ownership, maintenance, operation or use of a firearm carried in public wherein such coverage shall be at least in an amount or limit of

$300,000, exclusive of interests and costs, on account of injury to or death of more than one person and for damage to property, in any one incident.  NJ ST 2C:58 - 4.3 (New section).

Related sections establish proof of insurance requirements, admissibility in judicial proceedings and penalties for non-compliance.

***Liability Coverage in Standard Homeowners, Renters, Personal Automobile, and Umbrella Insurance Policies***

8. Homeowners, renters, and personal automobile insurance typically covers two primary risks: loss or damage to specific property, and potential legal liability arising from claims and lawsuits filed against the policyholder alleging bodily injury, property damage, or similar harm.  It is the latter coverage – "liability insurance" - that is relevant to the new law.

9. Liability insurance provides two essential protections for policyholders, (1) insurers retain and pay for an attorney or attorneys to represent the policyholder (often called the "duty to defend"), and (2) pay for settlements or adverse judgements against the policyholder up to the insurance policy limits ("duty to indemnify").[3]

---

[3] Please assume that when I describe any insurance coverage, it is always subject to various policy terms, conditions, and exclusions.

5

10. While the property insurance component of these policies is limited to specifically described properties – one's home or dwelling, personal property, or cars owned by the policyholder – liability insurance for homeowners and renters essentially follows the policyholder and is *not* limited to covering claims and lawsuits that occur within the policyholder's residence.  It also protects insureds for claims arising from actions outside a home, an apartment, or any particular residence, as long as it occurs within the coverage territory, which is typically the U.S. and Canada.[4]  This is important here, as the new law applies to individuals carrying a handgun in public.

11. Liability insurance policies can also be thought of as "all-risk" policies, meaning that they cover claims arising from any circumstance or means, unless it is specifically excluded in the policy, either by exclusions that apply broadly, such as intentional harm exclusions, or those related to a particular act or element (e.g., exclusions for sexual abuse, and property

---

[4] Generally, liability insurance for motor vehicles is triggered when the claim arises from the use of the motor vehicle, including of course car accidents that occur on public streets and other locations.

damage caused by pollutants).[5]  So, a liability claim is generally covered if there is (a) bodily injury or property damage, (b) caused by an "occurrence" (a defined term, which requires it be an "accident"), (c) during the policy period, (d) in the policy territory, and (e) not otherwise excluded. Automobile policies are specifically tied to auto accidents[6] and this coverage includes the named insured(s) and their family members when using any automobile, and typically anyone else using with permission an automobile identified in the automobile policy.

12. Homeowners, renters, and automobile policies rarely have specific exclusions for liability arising from the use of a firearm and I am not aware of any insurer that utilizes one routinely, nor of any public database that

---

[5] See, e.g., the ISO Forms HO 00 03 05 11, and HO-4 Ed. 4-84.

[6] Conversely, homeowners and renters liability coverage specifically exclude liability arising out of the use of an auto.  The insurance coverage boundary between homeowner's and renter's exclusions for claims "arising out of a" motor vehicle and the automobile insurance requirement that claims are from "auto accidents," is sometimes not clear and case law varies across the states and sometimes inconsistently applied within a particular jurisdiction.  For an example related to the use of a firearm, see *Aetna Cas. & Sur. Co. v. Safeco Ins. Co.,* 103 Cal.App.3d. 694, 697-700 (Cal. Ct. App. 1980).  Accordingly, only having auto liability insurance would not independently satisfy Section 4's insurance requirements.

tracks what insurers, if any, have firearm exclusions in their liability coverage.[7] However, I have searched hundreds of ISO policy forms for firearm exclusions regularly over the last ten years and most recently to prepare for my certification, and I have not found any liability exclusion referencing firearms.

13. Thus, so long as the other conditions are met, liability "arising out of the ownership, maintenance, operation or use of a firearm carried in public"- the coverage required by Section 4 – would be included as a covered liability or risk, subject as all other risks, to the other terms in the policy. The "occurrence" or accident requirement in these policies covers a range of actions and behaviors, and negligent use of a firearm that resulted in bodily injury or property damage would be covered in the same manner as other causes of loss. The policy extends to all insureds, usually defined as the named insured(s) – individuals specifically named in the policy (e.g., the homeowners) - relatives residing in the same household, and usually the named insured's children living away from home while attending school.

---

[7] There are hundreds of property-casualty insurers and insurance groups in the U.S., and while most of them utilize (in whole or in part) standard homeowner, renters, and personal automobile policy forms developed by ISO (formerly the Insurance Services Office, and now part of Verisk), some do not.

This means, for example, that a nineteen-year-old male residing in his parent(s)' or guardian's home is included in their homeowners or renters liability coverage under the same terms and conditions that apply to the named insureds.

14. A fourth type of insurance policy allows individuals to increase the amount of liability insurance above that provided by their primary or underlying homeowners, renters, or automobile insurance.  These excess policies are often called "umbrella" policies because they typically extend the liability limits of both the homeowners/renters and personal auto policies, rather than being tied to only one of the coverages.  While there is more variation in the policy forms used by different insurers, they generally contain either the same coverage grants (and exclusions) as the primary policies, or broaden them in some areas, such as reducing the scope of particular exclusions. They also require policyholders to maintain specified liability limits in their underlying policies.  As umbrella and excess insurance policies are seldom needed to resolve liability claims against the policyholder, and because the insurer's duty to pay the policyholder's legal costs is already priced in the primary home, renters, and auto policies, excess or umbrella coverage is often surprisingly inexpensive compared to premiums for the primary policies.

*Stand-alone Policies*

15. Another option for obtaining the necessary liability insurance is to purchase a stand-alone liability insurance policy that is not tied to a homeowners, renters, or automobile policy.[8] These policies provide similar coverage as those afforded in homeowners and renters liability insurance forms and are similarly "all-risk" policies.

16. There are also liability insurance policies specific to firearm-related liability risks.[9] This is currently a small market and often underwritten by surplus lines insurers.[10]  However, since 2022 Public Law Chapter 131 was enacted

---

[8] For example, State Farm offers "comprehensive personal liability" policies, https://www.statefarm.com/simple-insights/residence/what-is-individual-liability-insurance-and-what-does-it-cover.  Many insurers, however, are no longer writing these policies, likely in part due to the expanding market for renters insurance.

[9] Prime Insurance Company, which does business in all 50 states, offers "Firearms and Concealed Weapons Insurance Coverage."  See, https://www.primeis.com/product-lines/personal-lines/concealed-weapons/.

[10] Surplus lines insurers typically offer insurance products that are either generally unavailable in the "admitted" (regular) market, or for policyholders who are considered too high-risk to obtain insurance from the admitted market. Generally, surplus lines insurance policies do not need to comply with state insurance rating and policy form law and may be exempt from other state requirements as well. Each state maintains a list of surplus lines insurers allowed to operate in the state, the types of policies that may be written, and the amount of deregulation they enjoy. The New Jersey Department of Banking & Insurance ("DOBI") website

on December 22, 2022, and Section 4's insurance provision is not in effect until July 2023, it remains to be seen what admitted market and surplus line options will become available.

17. All these policies contain various exclusions, the most relevant one for firearm coverage is the exclusion for intentionally caused harm (often called "intentional acts" exclusions).  Though the wording and breadth of this exclusion vary, they are found in all liability insurance policies.  This exclusion, along with "criminal acts" exclusions,[11] mean that most intentional shootings would not be covered.[12] However, insuring

---

provides a list of helpful links on surplus lines insurance, https://www.state.nj.us/dobi/division_insurance/sleo.htm#whitelist.

[11] Criminal acts exclusions, while not ubiquitous, are becoming more common in personal lines liability policies.  While the scope of this exclusions varies, some purport to exclude acts that violate any statutes, regulations, and in some instances, local ordinances as well.  However, insurance is a heavily regulated product, particularly in personal lines markets, and states have the authority to require, prohibit or modify coverages, conditions, and exclusions, including intentional harm and criminal acts exclusions (which some states do).  Most states, including New Jersey, require personal lines insurers to file and obtain approval for proposed insurance policy forms, either prior to use or when introduced in the state. N.J.S.A. 17:36-5.15.

[12]  For example, "homicides," the categorization used by the Center for Disease Control, accounted for well over 40% of all firearm deaths in 2020 (suicide by firearm accounts for the majority of firearm deaths).  CDC Web-based Injury

intentionally caused harm broadly speaking has long been against public policy in NJ (and in other states)[13] and the NJ Legislature can be presumed to be aware of this limitation when drafting and passing the insurance provisions in Assembly Bill 4769.[14]

*New Jersey Homeowners and Automobile Insurance Markets*

18. There is robust national competition in the personal lines insurance market. More than 30 insurance groups, for example, do business in New Jersey.[15]

---

Statistics Query and Reporting System (WISQARS). Select Fatal Injury and Violence Data, filter by year, then mechanism (firearm) and intent (all).

[13] See, e.g., *Allstate Ins. Co. v. Malec*, 104 N.J. 1, 11–12 (N.J. 1986), citing *Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477, 483 (N.J. 1978).

[14] New Jersey law interprets the scope of intentional harm exclusions narrowly, which means that a greater range of actions by an insured would likely be covered under their liability insurance policy than in some other states. See, e.g., *Cumberland Mut. Fire Ins. Co. v. Murphy,* 183 N.J. 344 (N.J. 2005); *J.C. v. Citizens Insurance Co. of America,* No. CV 137153 MAST JB, 2014 WL 12588288, at *4 (D. N.J. Dec. 31, 2014).

[15] Major nationwide insurers are well-represented; for example, in the DOBI Homeowners Market Survey identifies the top ten homeowners insurers in New Jersey in June 2022 as State Farm, New Jersey Manufacturers Group, Allstate, Travelers, Liberty Mutual, America Family, Chubb, Plymouth Rock (Palisades Group), USAA, and Farmers.  State Farm, the leading insurer, had 11.69% of the Homeowners market.  DOBI market share reports available at https://www.state.nj.us/dobi/division_insurance/ppareports.htm. For personal automobile insurance, in June 2022 the top ten were GEICO (Berkshire Hathaway), Progressive, New Jersey Manufacturers Group, Progressive, Allstate,

The percentage of homeowners with insurance coverage nationwide and in NJ is already high, due to mortgage lenders' insurance requirements, as well as the desirability of insuring what is typically one's most significant financial asset. The percentage of renters with insurance is lower, though the market is growing.[16] Because renters insurance does not cover the physical structure of the building, the premiums are much less than those charged for homeowners policies. In theory, drivers in New Jersey already have liability insurance, as New Jersey, as does essentially every other state, requires it as a condition of driving.[17] The required minimum liability limits are well under Section 4's $300,000 requirement, but higher liability limits are routinely available and frequently obtained, along with purchasing an umbrella policy.

---

State Farm, Plymouth Rock (Palisades Group), Liberty Mutual, USAA, Travelers and Farmers. GIECO had 24.27% of the New Jersey Market. *Id.*

[16] Though estimates vary, 85% - 95% of homeowners have homeowners insurance, the large majority the ISO HO O3 special form, which offers the broadest insurance coverage.  The percentage of renters who have renters insurance is estimated at around 55% - 60%. See, e.g., https://www.policygenius.com/homeowners-insurance/homeowners-insurance-statistics/.

[17] Homeowners and renters, rather than automobile insurance, would provide most of the coverage available for firearm-related deaths or injuries.

*Conclusion*

Section 4 of 2022 N.J. Sess. Law 131 requires liability coverage that is likely met by standard homeowners and renters insurance policies, provided that the required minimum limits are met and there are no specific firearms exclusions. I am not aware of any policy that has such a firearms exclusion. Additional options for specific coverage may also become available in the future.

I certify that pursuant to 28 U.S.C. § 1746 and under penalty of perjury that to the best of my knowledge, information, and belief, the foregoing is true and correct.

*[signature]*

_____
Peter Kochenburger
February 13, 2023