UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, and ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., | : | No. 1:22-cv-07463-RMB-AMD |
| Plaintiffs, | : | ***KOONS* PLAINTIFFS' POST-ARGUMENT BRIEF** |
| v. | : | |
| MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, | : | |
| Defendants. | : | |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; GIL TAL; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, | : | No. 1:22-cv-07464-RMB-EAP |
| Plaintiffs, | : | |
| v. | : | |
| MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, | : | David D. Jensen, Esq.<br>DAVID JENSEN PLLC<br>33 Henry Street<br>Beacon, New York 12508<br>Tel: 212.380.6615<br>david@djensenpllc.com |
| Defendants. | : | |

-i-

## **TABLE OF CONTENTS**

I.    The Historical Basis for Sensitive Places is Active Government Security ...................................................................................... 1

II.    People Cannot Use Curbside Check-In to Check Firearms at Airports ................................................................................................... 6

III.    The Government as Proprietor Cannot Exclude Firearms ............................ 7

IV.    Conclusion ..................................................................................................... 8

# **TABLE OF AUTHORITIES**

### **Cases**

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .............................................. 5

*Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) ........................ 8

*Griffin v. Wisconsin*, 483 U.S. 868 (1987) ............................................................... 8

*Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220
   (W.D.N.Y. Nov. 3, 2022) ...................................................................................... 2

*Int'l Soc'y for Krishna Consciousness, Inc.*, 505 U.S. 672 (1992) ......................... 7

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. ___,
   141 S. Ct. 2038 (2021) ......................................................................................... 4

*N.J. by Jacob v. Sonnabend*, 37 F.4th 412 (7th Cir. 2022) ..................................... 8

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___,
   142 S. Ct. 2111 (2022) ................................................................................*passim*

*New York v. United States*, 326 U.S. 572 (1946) .................................................... 8

*O'Connor v. Ortega*, 480 U.S. 709 (1987) .............................................................. 8

*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1988) ....................... 8

*Tinker v. Des Moines Ind. Community Sch. Dist.*, 393 U.S. 503 (1969) ................ 8

*United States v. Kokinda*, 497 U.S. 720 (1990) ...................................................... 7

### **Statutes**

A DIGEST OF THE LAWS OF THE STATE OF GEORGIA (Watkins eds., 1800) ............... 2

PUBLIC LAWS OF THE STATE OF SOUTH CAROLINA (Grimke, ed., 1790) .................. 2

### **Other Authorities**

American Airlines, Curbside check-in, *available at* https://bit.ly/3z9Y3YL .......... 6

Br. for the Center for Human Liberty as Amicus Curiae in Supp. of Plfs.-
   Appellees, *Antonyuk v Nigrelli*, No. 22-2908, Doc. 313
   (2d Cir. Feb. 9. 2023) .......................................................................................... 3

David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205 (2018) ............................................................. 2, 5

LAWS OF THE COLUMBIAN COLLEGE IN THE DISTRICT OF COLUMBIA (1824) ........... 5

LAWS OF THE UNIVERSITY OF NORTH-CAROLINA (Gales 1800) ............................... 4

THE LAWES OF THE COLLEDGE PUBLISHED PUBLIQUELY BEFORE THE STUDENTS OF HARVARD COLLEDGE (1655) ....................................................... 4

THE LAWS OF RHODE-ISLAND COLLEGE (Carter 1803) ............................................... 4

THE LAWS OF YALE COLLEGE (Thomas Green and Son 1800) ................................. 4

THE MINUTES OF THE SENATUS ACADEMICUS [of the University of Georgia], 1799-1842 (Univ. Ga. Lib. 1976) ......................................................................... 4

Transportation Security Administration, Transporting Firearms and Ammunition, *available at* https://bit.ly/3TLvbj7 ................................................. 6

United Airlines, Traveling with sports equipment: Firearms, *available at* https://bit.ly/2OweCnZ ............................................................................. 6

## **<u>Regulations</u>**

49 C.F.R. § 1544.203 ................................................................................................... 6

This brief addresses three issues that arose at the March 17, 2023 argument. First and foremost is the historical basis for banning firearms from sensitive places, which (we explain) is the presence of active security. Beyond this, we clarify that individuals cannot use curbside check-in to check firearms at airports, and that state actors are not free to exclude firearms on the same basis as private actors "as proprietors."

### I. The Historical Basis for Sensitive Places is Active Government Security

The Supreme Court's decision in *Bruen* provides two key reference points that illuminate the reach of "sensitive places." First, "sensitive places" cannot be "expand[ed]" to "simply . . . all places of public congregation that are not isolated from law enforcement." *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2134 (2022). To do so would be to "define[] the category of 'sensitive places' far too broadly." *Id.* Accordingly, *Bruen* forecloses the State's argument for an analogical methodology that would effectively allow it to do this same thing—that is, to prohibit firearms in "all places of public congregation."

Second, *Bruen* identified three—and only three—specific locations that historically qualified as "sensitive places." *See id.* at 2133. The historical examples were "legislative assemblies, polling places, and courthouses." *Id.* The Court held that by analogizing to "*those* historical regulations of 'sensitive places,'" courts could "determine that modern regulations prohibiting the carry of firearms in new

and analogous sensitive places are constitutionally permissible." *See id.* (emphasis added).

The principle that unites the three sensitive locations is that, historically, these particular locations often had comprehensive security. *See Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 WL 16646220 at *14 (W.D.N.Y. Nov. 3, 2022) ("Legislative assemblies and courthouses, further, are typically secured locations, where uniform lack of firearms is generally a condition of entry, and where government officials are present and vulnerable to attack"); *see also* David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205, 290 (2018). For example, early South Carolina laws provided that "sheriffs shall by themselves, or their lawful deputies respectively, attend all the courts hereby appointed, or directed to be held, within their respective districts." THE PUBLIC LAWS OF THE STATE OF SOUTH CAROLINA 271 (Grimke, ed., 1790). Georgia laws from the same period required "the sheriff of each county or his deputy" to "attend at . . . elections for the purpose of enforcing orders of the presiding magistrates in preserving good order." A DIGEST OF THE LAWS OF THE STATE OF GEORGIA 611 (Watkins eds., 1800). Other states required or provided for security in these places, as well as in their state legislative assemblies. *See* Br. for the Center for Human Liberty as Amicus Curiae in Supp. of Plfs.-Appellees, *Antonyuk v Nigrelli*, No. 22-2908, Doc. 313 at 8–17 (2d Cir. Feb. 9,

2023) (collecting statutes regulating or providing for security in courthouses, legislative assemblies, and polling places).

The connection between sensitive locations and comprehensive security makes sense when we remember that the purpose of the Second Amendment is self-defense. The link reflects the concept that the government can limit the right to self-defense when it takes the duty of protection upon itself. What is more, because the Second Amendment is not limited to Founding-era technology, *see, e.g.*, *Bruen*, 142 S. Ct. at 2143 (holding that Americans are entitled to use arms that are "in common use today"), it follows that the government must provide a level of security that reflects modern day realities. At a minimum this means secured entry with armed guards and magnetometers—similar to what is present in federal courthouses. *See Bruen* Tr. at 32 ("If it's a place like a courthouse, for example, a government building, where everybody has to go through a magnetometer and there are security officials there, that would qualify as a sensitive place.") (Alito, J.).

While the Plaintiffs in *Koons* do not challenge the "sensitive place" restrictions that pertain to schools, we recognize that the Court may find it useful to consider firearms restrictions in schools in their historical context. Here, history reveals an altogether separate tradition than that which governs "legislative assemblies, polling places, and courthouses." Schools, through teachers and administrators, have historically acted "in loco parentis" with the ability to "stand[]

in the place of students' parents under circumstances where the children's actual parents cannot protect, guide, and discipline them," for instance, when students are physically at school. *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 594 U.S. ___, 141 S. Ct. 2038, 2046 (2021). Such in loco parentis authority dates back centuries. While the Constitution imposes limits and alters this authority, *see id.*, this historical tradition reveals the solicitude commonly granted schools and their regulations over students. Indeed, when schools barred firearms during pertinent historical times, it is telling that they did so as part of student conduct rules. *See, e.g.,* THE LAWES OF THE COLLEDGE PUBLISHED PUBLIQUELY BEFORE THE STUDENTS OF HARVARD COLLEDGE (1655) ("No Student nor students shall be suffered to have a Gunn in his or their Chambers, or Studyes, or keeping for their use any elsewhere in the Towne.").[1] Given the historical tradition of restricting firearms in schools in

---

[1] *See also* THE LAWS OF YALE COLLEGE 26 (Thomas Green and Son 1800) ("No Scholar is allowed to keep any kind of fire-arms, or gun-powder, upon penalty of seventeen cents; and if any Scholar shall fire any gun-powder in or near the College-yard, he shall be fined fifty cents: and if it be done near the dwelling-house or the person of the President, a Professor or a Tutor, he shall also be punished as for contempt."); LAWS OF THE UNIVERSITY OF NORTH-CAROLINA 12 (Gales 1800) ("No student shall keep a dog or fire-arms; nor shall he use fire-arms without permission from some one of the Faculty."); THE LAWS OF RHODE-ISLAND COLLEGE 12 (Carter 1803) ("No student shall keep any kind of fire-arms or gunpowder in his room, nor fire gunpowder in or near the College, in any manner whatever.") (now known as Brown University); THE MINUTES OF THE SENATUS ACADEMICUS [of the University of Georgia], 1799-1842, 86 (Univ. Ga. Lib. 1976) ("[N]o student shall be allowed to keep any gun, pistol, Dagger, Dirk sword cane or any other offensive weapon in College or elsewhere, neither shall they or either of them be allowed to be possessed of the same out of the college in any case whatsoever."); LAWS OF THE COLUMBIAN

student conduct codes and the in loco parentis authority undergirding it, the State can only make reference to historical restrictions of firearms in schools to the extent its modern restrictions are similarly limited and similarly supported by the in loco parentis authority. Needless to say, the State has presented no such analogies for any of the places the *Koons* Plaintiffs challenge.

Nor does *Heller*'s "presumptively lawful" footnote about restrictions on carrying firearms in "government buildings and schools" change the analysis. *See District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008). The footnote did not use the word "presumptively" to allocate the parties' respective burdens of production and persuasion. Rather, *Heller*'s statement only indicated that while the Court "d[id] not undertake an exhaustive historical analysis" of the exceptions it had tentatively sketched, those exceptions were "presumptively lawful" in the sense that the Court presumed that further historical analysis would demonstrate that those restrictions were part of the Nation's tradition. *See id. Bruen* itself proves that *Heller*'s "presumptively lawful" language does not relieve the State of the burden of justifying its restrictions through historical analysis, because *Bruen* undertook precisely that historical analysis with respect to sensitive places. And, as is now

---

COLLEGE IN THE DISTRICT OF COLUMBIA 10 (1824) ("No student shall keep a servant, nor shall he keep fire arms, or any deadly weapon whatever. He shall bring no gunpowder upon the College premises . . . .") (now known as George Washington University); Kopel and Greenlee, 13 CHARLESTON L. REV. at 247–48 (describing University of Virginia's ban on student possession).

clear, that analysis shows that the State of New Jersey cannot just put the label "sensitive" on a location and then ban firearms there—just as the State of New York could not attempt to pull off such a maneuver for the entire island of Manhattan. *See Bruen*, 142 S. Ct. at 2134.

## II. People Cannot Use Curbside Check-In to Check Firearms at Airports

Notwithstanding the State's suggestion at the hearing, it is not possible to check a firearm as baggage using curbside check-in. This is because federal regulations require travelers to "declare[] to the aircraft operator, either orally or in writing before checking the baggage that any firearm carried in the baggage is unloaded," *see* 49 C.F.R. § 1544.203(f)(i), which requires a higher level of interaction than merely dropping off a bag. Indeed, a TSA webpage directs passengers with firearms or ammunition to "[d]eclare the firearm and/or ammunition to the airline when checking your bag at the ticket counter." *See* Transportation Security Administration, Transporting Firearms and Ammunition, *available at* https://bit.ly/3TLvbj7. Likewise, major airlines advise anyone traveling with a firearm to "check in to your flight at the airport counter" as "[c]urbside check-in of a firearm is . . . not permitted." *See* United Airlines, Traveling with sports equipment: Firearms, *available at* https://bit.ly/2OweCnZ; *see also* American Airlines, Curbside check-in, *available at* https://bit.ly/3z9Y3YL.

### III. The Government as Proprietor Cannot Exclude Firearms

Finally, and even though the cases at bar do not raise the issue directly, we must point out that a state actor is not free to exclude on the same basis as a private actor—whether acting "as a proprietor," or not. The guarantees of the Second and Fourteenth Amendments bind state actors in ways that do not apply to private actors. Regardless of what the Constitution may permit in other circumstances, *Bruen* establishes that, for purposes of the Second Amendment, if the State is to limit the carriage of firearms from State-owned properties, it may only do so because of an enduring historical tradition of regulation. The State has presented zero historical evidence of "proprietorship" serving as a basis for the government to exclude firearms. Under *Bruen*, that is the end of the matter.

Moreover, and in all events, the Supreme Court has repeatedly held that governments cannot infringe on people's constitutional rights simply by characterizing their actions as that of a "proprietor." For example, the Supreme Court has expressly ruled that "[t]he Government, even when acting in its proprietary capacity, does not enjoy absolute freedom from First Amendment constraints, as does a private business[.]" *See United States v. Kokinda*, 497 U.S. 720, 725 (1990); *see also Int'l Soc'y for Krishna Consciousness, Inc.*, 505 U.S. 672, 679 (1992). One notable example is public schools, where even though states and officials have "comprehensive authority . . . to prescribe and control conduct," that authority does

not include the ability to prohibit expressive conduct that does not cause "interference, actual or nascent, with the schools' work or . . . collision with the rights of other students to be secure and to be let alone." *See Tinker v. Des Moines Ind. Community Sch. Dist.*, 393 U.S. 503, 507-08 (1969); *see also N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022) (school's prohibition of shirt with image of a firearm was invalid). Another example, which concerns the right to be free from unreasonable searches and seizures, is employee drug testing. Government employers can require employees to submit to drug tests only when there are "'special needs.'" *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 620 (1988) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)). Of course, private employers can generally drug test whomever they want. *See O'Connor v. Ortega*, 480 U.S. 709, 732 (1987) (Scalia, J., concurring in the judgment). And, in the context of taxation and regulation, the Supreme Court has explicitly recognized that "the distinction between 'governmental' and 'proprietary' functions [is] 'untenable' and must be abandoned." *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 542 (1985) (quoting *New York v. United States*, 326 U.S. 572 (1946)).

As with other rights, the Constitution does not allow for a blank check to restrict Plaintiffs' Second Amendment rights under the guise of "proprietorship."

## IV.  Conclusion

The Court should enjoin the challenged provisions.